COTTRILL, Respondent, vs. PINKERTON, Appellant.

*March 10—April 11, 1933.*

314

For the appellant there was a brief by *D. K. Allen* and *A. H. Gruenewald,* both of Oshkosh, and oral argument by *Mr. Allen.*

For the respondent there was a brief by *B. A. Husting* and *J. L. Kelley,* both of Fond du Lac, and oral argument by *Mr. Kelley.*

FAIRCHILD, J.    The ruling on the plea in abatement by the trial court was in accordance with the proper interpretation of sec. 102.29, Stats. 1929.    By that section exception is created to the rule of automatic assignment to the employer of a claim for damages arising out of the injury of an employee by the negligence of a third party, where there has been an acceptance of compensation by the employee. This exception is plainly described by the language, "Except in those cases provided for in paragraph (b) of this subsection, the making of a lawful claim against an employer . . . shall operate as an assignment. . . ."    Para-

graph (b) of that section reads in part: "If the insurance carrier of the employer and of the third party shall be the same or if there is common control of the insurer of each. . . ." This is the only class of cases provided for in paragraph (b), and, reading the regulations of assignment under the compensation act together, leaves no room for doubting that no assignment occurs where the third party and the employer have a community interest in the final result which, on the face, appears and may be truly said to be antagonistic to the employee. Nothing that the respondent did with relation to compensation under the workmen's compensation act amounted to an assignment of her claim, and her acts do not in any way interfere with her maintaining her action.

Her employer's office was at Neenah. She lived at Oshkosh. She was permitted to be one-half hour late in the morning in arriving at Neenah, but the evidence is that she was expected to make that half hour up during the day. The bus on which she usually traveled from Oshkosh to Neenah arrived at Neenah at 8:30 a. m. The accident occurred while she was on her way to work and before that hour in the morning. She was not paid for the time consumed in traveling from Oshkosh to Neenah, and it is doubtful if any circumstances are present which placed her at the time of the accident in a position where she may be said to have been performing duties arising out of her employment and incidental thereto; but this becomes of no consequence in this case, as, even if she did receive compensation under the workmen's compensation act, it does not bar her right to maintain this action—there was an offer to return and proper credits can be given for such advances as were made. As pointed out, the law itself provides against an assignment by reason of acts of the respondent under the circumstances because of the presence of a common insurer of the employer

and the negligent. defendant. There being no assignment, the plea in abatement was properly overruled.

The learned trial judge, in a memorandum decision on motions after verdict, observed, concerning the issues involved in the trial on the merits, that "the criticisms of the verdict pertain wholly to questions of fact. On the controlling questions fair men might well differ not only on the facts directly testified to, sharply conflicting as much of the evidence was, but also on the inferences legitimately to be drawn therefrom." This, we think, succinctly states the situation as to the existence of a jury question. The difficulty in which the defendant found himself as he drove south toward the point of collision was believed by the jury to have been created by his failure to take into consideration the hazard which was present due to the slippery and icy condition of the pavement. He saw a boy ahead of him on a bicycle; he saw automobiles approaching from the south; he was aware of the fact that the oncoming machines were traveling at such a rate that they would advance to the north to a position to prevent the appellant's using the north lane of travel for passing the boy. Still, with these conditions apparent to one acting with ordinary care, appellant did not bring his car under control so as to be able to avoid striking either the boy or one of the oncoming machines. This failure on appellant's part resulted in a situation under which it became necessary for him to take the chances incident to putting on his brakes on that slippery surface in order to save the boy. There is testimony that just before the collision he had moved over into the lane of traffic for northbound cars. There is no dispute but that he applied his brakes so effectively that the boy escaped injury, but, in this effort, which became necessary because of his failure timely to bring his car under proper control, he invaded the path of the automobile in which the respondent was riding, and the

injury resulted. The jury might well believe that he failed to maintain such rate of speed under the conditions there present as to enable him to stop his car before encountering other travelers who were lawfully upon the highway; that this amounted to a failure to exercise ordinary care with reference to speed, control, and lookout.

The claim by appellant that the presence of his car on the left side of the highway is excused by the circumstances is not well founded under the evidence supporting the verdict. The emergency was of his own creation and cannot avail him as a protection against liability. The requirements of the condition in which the appellant placed himself are chargeable to him under the findings of the jury, and, as ruled by the learned trial judge, the findings of the jury are supported by the evidence.

Appellant urges that there was error in the admission in evidence of certain photographs, one taken four weeks after the injury, and a photograph of the respondent taken about twelve years before the injury, and insists that the photographs can serve no helpful purpose and their effect was to incite the jury to allow excessive damages. Photographs are receivable in evidence when they are exact reproductions of persons or situations, when they are not too remote, and where they are not likely to give a wrong impression or create undue sympathy or prejudice on the part of the jury. Jones, Evidence, sec. 582. There must always be some substantial, legitimate reason for the use of such representations or they should not be received. The exhibits used in this case show the face of the respondent prior to the accident, and the same face after the wounds were inflicted. The condition of the face previous to the accident was described by witnesses; and this photograph would not, in the nature of things, unduly arouse the passions or prejudices of the jury, even though its introduction may have been unneces-

sary. The spread of time between the picture which showed the respondent before the accident and the one which showed her face after the accident would not of itself constitute a valid objection to the picture on the ground of remoteness. The point sought to be established was the absence of the existence of any scars prior to the accident. There was a transformation in respondent's appearance resulting from the injuries. Evidence of the injury is abundant without the use of photographs; the present condition of respondent was before the jury by reason of her presence. The second photograph, taken for the purpose of exactly disclosing the scarred condition of the face, was evidence of a fact which was receivable in evidence and as a true representation does not seem to be objectionable. Some evidence of this condition must necessarily be presented to the jury. What may be styled as excessive use of photographs in cases of this character is objectionable, but the record here does not disclose any prejudicial error with respect to their use.

We have examined the record with reference to the point raised as to improper argument by respondent's counsel before the jury, and find no sufficient reason for disturbing the ruling of the trial court thereon as it was made and included in the decision on motions after verdict.

The damages are challenged as excessive. The respondent is a woman forty-four years of age, she had been employed for some years, and was drawing approximately $1,100 a year. She has an expectancy of life of twenty-five years. Under the evidence the results of the injury are such that she cannot follow her former occupation and they will interfere to a very considerable degree with her securing any lucrative employment. Pain and suffering, disfigurement and mutilation of the person, impairing capacity to pursue the ordinary avocations of life, mortification which a person has suffered and will suffer in the future by reason of the

scarred condition of the face, the fact that she will become an object of curiosity, are all to be considered in determining the amount of damages. The jury allowed a total of $12,364.50 as damages. They considered and included in this $263 medical and hospital expenses, $101.50 for loss of clothing and apparel; the balance is allowed for loss of wages, diminished earning power, disfigurement which is severe, and pain and suffering both mental and physical. While the amount is large it cannot be said to be excessive.

*By the Court.*—Judgment affirmed.