Forbes, Respondent, vs. Forbes, Appellant.

*December 7, 1937—January 11, 1938.*

478

For the appellant there was a brief by *Hanitch, Johnson, Fritschler & Barstow* of Superior, and oral argument by *John C. Fritschler.*

For the respondent there was a brief by *Powell & Sprowls* of Superior, and oral argument by *John S. Sprowls.*

FRITZ, J. On this appeal the defendant's first and second contentions are that as a matter of law the defendant was not negligent; and that the plaintiff cannot recover because she had assumed the risk of injury. The facts are not greatly in dispute. The plaintiff was injured when an automobile, in which she was a passenger and which the defendant was operating, rolled over a highway embankment, two hundred or three hundred feet west of the crest of a hill on which he, traveling westward, had passed an eastbound automobile. He was an experienced driver, and his speed of forty to forty-five miles per hour as he approached the crest was not an excessive rate on the twenty-feet-wide oiled roadway of the state highway in question. As the automobiles approached and passed, each driver was properly on his side of the traveled roadway and had ample room to pass in safety. When the driver of the other automobile was fifty feet from the crest of the hill, he saw the defendant's automobile, but the latter failed to see that other automobile until it was so close that he became startled to such an extent that he turned abruptly onto the graveled shoulder, north of the roadway. Then, at increased speed, he crossed the crest and went a distance of two hundred or three hundred feet downhill, veering first to the south shoulder and then back again to the north shoulder of the road, until his automobile finally rolled down an embankment on that side.

The jury found that the plaintiff's injury was caused by negligence of the defendant in respect to speed, lookout, control; by the defendant negligently increasing the danger or risk which the plaintiff assumed when she entered the car; and by his failure to exercise his best skill and judgment in the manner in which he managed and controlled his automobile. It was not claimed that the defendant was negligent in any respect prior to his failure to see the approaching automobile until it was so close that he was needlessly startled thereby when he did finally see it. In view of the evidence

as to that failure, the jury could find that the defendant was negligent in not keeping a proper lookout; and that, but for that negligence, the defendant,—instead of becoming so startled as to abruptly turn to his right and increase his speed,—would probably have realized that the automobiles could pass safely, without any change in the course or speed of either. As the conditions which he could and should have observed in the exercise of ordinary care were such that there was in fact no emergency because of which there was any occasion or excuse for his sudden changes in the course, speed, and control of his automobile, the jury was warranted also in finding him guilty of causal negligence in each of those respects, and in failing to exercise the best skill and judgment which he possessed as a driver, and in increasing the danger or risk which the plaintiff assumed when she became a passenger.

On the other hand, the plaintiff cannot be held to have assumed, as a matter of law, the danger or risk of injury by the defendant's negligent acts. They were committed suddenly upon his approaching and passing the other automobile, and they followed in such rapid succession that there was no time or opportunity for her to protest or leave the car to avoid injury, even if she had been awake, instead of dozing. The jury did find that she failed to exercise ordinary care for her own safety at the time of and immediately preceding the accident, and that she ought to have foreseen that injury might probably follow from such failure. However, the only basis for finding that she was negligent was the fact that she had fallen asleep. But, the jury also found that her negligence was not a cause of her injury. That was in accord with our conclusion in *Schmidt v. Leuthener,* 199 Wis. 567, 227 N. W. 17, that the fact that an automobile passenger was asleep and thereby prevented from giving attention to his safety did not make him guilty of contributory negligence as a matter of law. Consequently, as the

jury found that there was no contributory negligence, there can be no denial of recovery by the plaintiff on that ground. But the defendant also contends that the court should have limited the plaintiff's recovery to eighty per cent of the damages assessed by the jury, because it returned the answer "20%" to the following question in the special verdict, to wit:

"What proportion of all the negligence of all parties which produced the injuries is attributable to the plaintiff?"

That question should not have been answered by the jury, in view of its answer to a prior question, by which it found that the plaintiff's injury was not caused by any negligence on her part. Inasmuch as there was no contributory negligence, there was no basis for finding that negligence on her part contributed to the extent of twenty per cent to produce her injury. Consequently, the court rightly disregarded that answer in holding that the plaintiff's damages, as assessed by the jury, were not to be reduced by twenty per cent.

The defendant further contends that although the accident occurred in Wisconsin, the plaintiff cannot recover the damages sustained by her as the result of defendant's negligence because the parties are husband and wife, whose domicile at the time of the accident, as well as the trial, was in the state of Illinois, under the laws of which a wife has no cause of action against her husband to recover damages so sustained in that state. In that connection the defendant recognizes the well-established rule that the *lex loci, i. e.,* the law of the place of the transaction, is to determine whether or not a certain set of facts gives rise to a cause of action (*Buckeye v. Buckeye,* 203 Wis. 248, 250, 234 N. W. 342); but the defendant argues that there is and ought to be the limitation to that rule that the *lex loci* will not give rise to a cause of action when it destroys a status which some other state is primarily interested in maintaining. No case is cited in which that limitation was applied. Both parties cite *Buck-*

*eye v. Buckeye, supra,* in which the plaintiff sued in this state to recover damages for injury sustained by her as the result of the defendant's negligent operation of an automobile in Illinois. When the accident happened the parties were unmarried, but subsequently the plaintiff married the defendant. At the time of the accident, as well as thereafter, their domicile was in Wisconsin. Under those circumstances we held that, although in this state a wife can maintain an action against her husband to recover damages sustained by her as the result of his tort committed in this state (*Fontaine v. Fontaine,* 205 Wis. 570, 238 N. W. 410), Mrs. Buckeye was not entitled to recover because of the rule "that the law governing the creation and extent of tort liability is that of the place where the tort was committed." In applying that rule, we said (p. 252):

"If, as seems clear, the law of Illinois is to govern, both as to the creation and extent of defendant's liability, and if the liability so created is subject to discharge or modification by the law of Illinois, we see no escape from the conclusion that plaintiff's cause of action has been wholly extinguished by her marriage."

By that conclusion we in effect held that the law of the place of the transaction involved in that case (*i. e.,* Illinois) in relation to the personal rights, duties, and obligations incidental to the marital status governed the legality, effect, and consequences of the transaction regardless of the law of the place of the domicile of the parties (*i. e.,* Wisconsin) as to the incidents of their marital status. In the case at bar both parties cite *Dawson v. Dawson,* 224 Ala. 13, 138 So. 414, 416; *Gray v. Gray,* 87 N. H. 82, 174 Atl. 508; *Howard v. Howard,* 200 N. C. 574, 158 S. E. 101, in each of which a married woman brought an action against her husband in the state of their domicile to recover damages for injuries caused by his negligence in a state in which a wife could not maintain such an action against her husband. It was held .

that although she could have maintained such an action if based on a tort committed by her husband in the state of their domicile, she could not recover therein for a tort committed by him in a state under the laws of which there was no liability as between husband and wife for a tort committed therein. The rule that the law of the matrimonial domicile governs as to the marital status of the parties was duly recognized in those cases, but in the *Gray* and in the *Dawson Cases* that rule was expressly stated to be inapplicable, in so far as the incidents of that status in relation to a transaction in another state than the matrimonial domicile are concerned. Thus, in the *Gray Case,* the court, in passing upon the argument that the wife's right to maintain the action was governed by the law of the matrimonial domicile as to her marital status, said (p. 509) :

"The argument fails to distinguish between status and the incidents which local law attaches to the status. The parties are husband and wife. That status they took with them into Maine. But the incidents of that status are those prescribed by the law of the place where transactions take place. As before pointed out, this rule has frequently been applied in tort actions where other relations were involved."

And in the *Dawson Case,* the court approved the following statement in *Alabama G. S. R. Co. v. Carroll,* 97 Ala. 126, 138, 11 So. 803, 18 L. R. A. 433, to wit:

"What these duties and liabilities are at the place of the contract are determinable by the law of that place; but when the parties go into other jurisdictions, the relation created by the contract under the law of the place of its execution will be recognized, but the personal duties, obligations, and liabilities incident to the relation are such as exist under the law of the jurisdiction in which an act is done or omitted as to the legality, effect or consequence of which the question arises.

"The only true doctrine is that each sovereignty, state or nation, has the exclusive power to finally determine and declare what acts or omission in the conduct of one to an-

other, whether they be strangers, or sustain relations to each other which the law recognizes, as parent and child, husband and wife, master and servant, and the like, shall impose a liability in damages for the consequent injury. . . ."

So, in the case at bar, the parties by reason of their marital status under the laws of Illinois continued as husband and wife while in Wisconsin, but while they were here their personal duties, obligations, and liabilities incidental to that status were such as existed or arose under our laws in relation to the legality, effect, and consequences of their transactions within this state. Therefore our rule that a wife can maintain an action for injuries sustained by her as the result of her husband's negligence in this state, governs in this action; and as that rule is not considered in this state to be destructive of the marital status, the defendant's contention as to a limitation thereof on that ground cannot be sustained.

*By the Court.*—Judgment affirmed.