HUTZLER, Appellant, vs. McDONNELL and another,
Respondents.

*January 13—February 10, 1942.*

For the appellant there were briefs by *Gordon, Law, Brody & Johns* of La Crosse, and oral argument by *Lawrence J. Brody.*

For the respondents there was a brief by *Hale & Skemp* of La Crosse, and oral argument by *Thomas H. Skemp.*

MARTIN, J. The plaintiff contends that the court erred: (1) In finding that defendant was not negligent as to lookout; (2) in finding that defendant was not negligent as to management and control of his car; (3) in finding that plain-

tiff assumed the risk incident to defendant's management and control of the car; and (4) in granting defendant's motion for a nonsuit.

The material facts are not in dispute. In brief, they are as follows: On the afternoon of November 16, 1940, Mr. McDonnell invited plaintiff to accompany him and one John White on an auto trip to Winona, Minnesota, in the evening of said date. Plaintiff accepted the invitation and the party left La Crosse for Winona at about 7:30 p. m. When they arrived at Winona, a distance of about twenty-eight miles from La Crosse, they were joined by a lady friend of Mr. White. It appears that the party of four spent the evening of the 16th and the early morning hours of the 17th at various night clubs in the vicinity of Winona. At these clubs they danced and had some highballs. There is no evidence that any of the members of the party were under the influence of liquor. At about 3:30 a. m., after leaving Mr. White's lady friend at her home in Winona, the other members of the party started back to La Crosse. On this trip defendant McDonnell was driving a Plymouth coupe, the plaintiff was seated in the middle, and Mr. White was to her right. The plaintiff testified:

"I am not acquainted with the highway, so I do not know exactly where the accident happened. We were driving along, the radio was playing and nobody was saying anything at the time. I was gazing out the window. I saw something on the road. I would say it was about two thirds of a block away when I first noticed it. I thought it was calves, cattle, livestock, or something of the kind, but I couldn't distinguish it. I didn't pay any attention at first until I noticed that McDonnell wasn't slowing down. Evidently he didn't see them. I hollered, and when I hollered he jerked like to give a start. Then the car swerved a little bit and turned off to the right into the ditch. I don't remember what happened to me in the upset, because I lost consciousness and didn't regain it until I was in the hospital."

The objects which plaintiff saw upon the highway turned out to be two deer. McDonnell testified that the road was straight and level for one fifth of a mile north of the scene of the accident; that the headlights on his car were in good working condition; that as he drove down the highway he saw the two deer when he was about one hundred fifty feet away from them; that one was in his lane of travel, standing broadside across the lane of travel; that the other was in the left-hand lane, standing right in the middle of the lane of travel. He further testified:

"I didn't do anything about it until I was about seventy-five feet away from them, that is, I was that close before I turned or before I applied my brakes. In the meantime no one in the car made an outcry before I saw the deer. I don't remember anybody saying anything afterward. I was too busy driving. I don't know whether, if I had applied my brake immediately upon seeing the deer, I could have stopped my car in time to have avoided the deer and avoided running off the highway."

He further testified that he was driving about fifty miles an hour when he first saw the deer. He did nothing about changing the course of his car or the speed until he got within seventy-five feet of the point at which the deer were standing. Plaintiff testified that the two deer were in the center of the highway; that there was room to pass on either side without getting into the ditch.

In granting defendant's motion for a nonsuit the court said:

"Driving on that highway at forty or fifty miles an hour at that hour in the morning is not in itself negligence, and the laws of Minnesota hold, as a matter of law, it isn't negligence at that particular speed, but at any rate it was the usual and average speed that he [McDonnell] had been driving. He was confronted suddenly, unexpectedly with a sudden emergency, which consisted of the fact that a couple of deer had wandered in the line of traffic. How long they had been there doesn't appear. The assumption is a very strong one that on

a heavily traveled highway of that kind, deer don't stand there very long. It is a fair assumption and presumption on the part of the court that those deer momentarily appeared on that highway in the line of vision of the driver of the car. Whether or not, if he had gone straight ahead or turned to the left or to the right, he could have avoided those deer is something no human being can testify to, because of the natural known habits of a wild animal of that kind. They are liable to turn anyway.

"About the only thing a driver of a car confronted with an emergency of that kind could do, this driver admittedly did, that is, to put on his brakes and turned to the right. Whether it would have been better to turn to the left doesn't make any difference. He used his best judgment and an accident happened. . . . There wasn't any proof of negligence upon the part of the driver of this car; both on the ordinary theory of negligence and on the theory of a sudden emergency there was no negligence."

As to the plaintiff's assumption of risk, the court said:

"I think, as a matter of law, that the plaintiff here assumed all the risk attendant with the driving of that car. She had been with him all evening until three o'clock in the morning. She said there was nothing unusual about his driving that car until instantly he saw these deer in the road. It brings us right back to the same proposition of a sudden emergency. She assumed that in a sudden emergency he would use his best judgment, which he did. I don't think that there is on either phase of this case a possibility of sustaining a judgment for damages. For that reason the motion of the defendants for a nonsuit is granted."

The accident having occurred in Minnesota, liability of the defendant, McDonnell, is determined by the laws of Minnesota. *Switzer v. Weiner,* 230 Wis. 599, 601, 284 N. W. 509. The courts of this state take judicial notice of the statutes of the United States and of all the states and territories. Sec. 328.01, Stats. As to lighting equipment of passenger ve-

hicles, sec. 2720–246 (a), 1940 Supp. to Mason's Minn. Stats. 1927, provides:

"There shall be an uppermost distribution of light, or composite beam, so aimed and of such intensity as to reveal persons and vehicles at a distance of at least 350 feet ahead for all conditions of loading."

It was stipulated by counsel that in the state of Minnesota contributory negligence on the part of the plaintiff bars recovery in this type of action. While the liability of the defendant is determined by the laws of Minnesota, the law of the forum governs the proof in court of the facts alleged. In other words, the sufficiency of the evidence to raise an issue for the jury is to be determined by the law of Wisconsin. Restatement, Conflict of Laws, § 595.

This being an appeal from a judgment of nonsuit, the plaintiff's evidence must be given the most favorable construction it will bear, and, if there is credible evidence from which a reasonable inference may be drawn that supports the plaintiff's cause of action, a jury question is presented. *France v. Sullivan,* 223 Wis. 477, 478, 271 N. W. 42, and cases cited.

Defendant testified that the headlights on his car were in good working condition. Under the law of Minnesota the lights were required to be of such intensity as to reveal persons and vehicles at a distance of at least three hundred fifty feet ahead. It is obvious that this provision is applicable to objects upon the highway the size of the two deer. There is no evidence to warrant the inference that these deer came out suddenly upon the highway when defendant's car was only one hundred fifty feet away. Plaintiff testified that she saw the deer standing upon the highway about two thirds of a block away. At first she thought they were calves, cattle, livestock of some kind. Defendant testified that when he saw them they were about one hundred fifty feet ahead of his car and

that both were standing, one in each lane of traffic. Plaintiff testified that in a conversation she had with defendant sometime after the accident he said to her "if he had been looking it would not have happened."

The facts in the instant case are quite similar to those in *Forbes v. Forbes,* 226 Wis. 477, 479, 277 N. W. 112. In that case plaintiff was injured when the car in which she was riding rolled over a high embankment as the result of her husband's surprised reaction to the approach of another car. The court said :

"It was not claimed that the defendant was negligent in any respect prior to his failure to see the approaching automobile until it was so close that he was needlessly startled thereby when he did finally see it. In view of the evidence as to that failure, the jury could find that the defendant was negligent in not keeping a proper lookout; and that, but for that negligence, the defendant,—instead of becoming so startled as to abruptly turn to his right and increase his speed,—would probably have realized that the automobiles could pass safely, without any change in the course or speed of either." To same effect see *Maurer v. Fesing,* 233 Wis. 565, 290 N. W. 191.

Upon the evidence we see no basis for application of the emergency doctrine. This court has repeatedly held that if a sudden emergency which confronts the operator of a vehicle is caused by his own negligence, he cannot claim the protection of the emergency doctrine. *Zoellner v. Kaiser,* 237 Wis. 299, 296 N. W. 611; *Bentson v. Brown,* 186 Wis. 629, 203 N. W. 380; *Cottrill v. Pinkerton,* 211 Wis. 310, 248 N. W. 124; *Roellig v. Gear,* 217 Wis. 651, 260 N. W. 232. We think it obvious that if defendant had kept a proper lookout he would not have found himself in any emergency.

As to assumption of risk, it is the law of this state that a guest does not assume the risk incident to the failure of the host to keep a proper lookout nor incident to his momentary failure to exercise proper management and control. *Maurer*

*v. Fesing, supra; Elkey v..Elkey,* 234 Wis. 149, 290 N. W. 627 ; *Zoellner v. Kaiser, supra; Forbes v. Forbes, supra.*

The evidence clearly presented a jury issue as to defendant's negligence with respect to lookout, and with respect to management and control of his car; likewise, as to plaintiff's assumption of risk and contributory negligence. The court erred in granting a nonsuit.

*By the Court.*—Judgment reversed. Cause remanded for further proceedings according to law.