COMMERCE INSURANCE COMPANY and others, Appellants, vs. BADGER PAINT & HARDWARE STORES, INC., Respondent.

*October 9—November 3, 1953.*

For the appellants there were briefs by *H. O. Wolfe* and *Wolfe, O'Leary & Kenney,* all of Milwaukee, attorneys, and *Vilas H. Whaley* of Racine of counsel, and oral argument by *Mr. H. O. Wolfe* and *Mr. Whaley.*

For the respondent there was a brief by *Whyte, Hirschboeck & Minahan,* attorneys, and *Victor M. Harding* of counsel, all of Milwaukee, and oral argument by *Mr. Harding.*

FAIRCHILD, J. The Klinkert building is a row of connected buildings used as retail stores along Washington avenue in Racine. The building stands at the top of a rather steep hill. There is a narrow ledge at the rear of the building about seven feet in width, and that ledge drops away at a 50 per cent grade for a distance of about 100 feet to the rear of the building. Immediately to the west of the Klinkert building is a theater building. The blank, concrete wall of the theater building extends over 100 feet out behind the Klinkert building and down the hill, so that a corner, or pocket, is formed between the theater and the Klinkert building. The defendant, Badger Paint & Hardware Stores, Inc., occupied the first floor and basement of one of the Klinkert building stores. The basement was divided by partitions, and the back part was used as a place for storing cartons and wastepaper. A rear basement door opened out onto the ledge at the top of the hill. This door was used only as a fire exit and for the purpose of removing trash. It was not used for the purpose of either receiving or delivering merchandise. The door was covered with sheet steel but had a wooden frame exposed to the outside. The outside frame was six or seven inches wide and two inches thick. Sticking out from the doorframe for about one-half inch was a rabbet. At the

bottom of the door was a rubber matting which made the door almost airtight when closed. Two windows appeared alongside the door, but there is no evidence that these were ever opened.

There had been difficulty in disposing of refuse of the character here involved, and arrangements had been made by the Badger Paint & Hardware Stores, Inc., with the fire department of Racine for cautious burning of rubbish at a designated spot at the foot of the hill in back of the building. It appears that it was the general custom of other merchants in the row of buildings here involved to have trash fires in the narrow area on the ledge behind the Klinkert building. The testimony revealed that fires had been burning within five to 20 feet of the Badger Paint & Hardware Stores, Inc., basement on the day in question.

Plaintiffs offered evidence and insisted that the fire causing the damage for which the plaintiff insurance company paid was the result of defendant's negligence in burning refuse where it did and at a time when there was a wind hazard. Plaintiff insists that the fire spread up the hill from the point of starting, and that embers or flying pieces of burning paper or sparks entered the basement through the door, which, it maintains, defendant's employees had negligently left open.

There is testimony that in burning such trash as was burned on this day, the employees of the company first placed what they were going to burn in 10 or 12 cartons, that they then carried those cartons through the rear door of the Klinkert building and closed the rear metal door, and that they then carried or pushed the cartons down the hill to the usual burning spot. One of the employees stood over the fire with a rake or shovel, and the other, armed with a rake, stood back up the hill where he raked up loose paper which was blowing. About ten minutes after the fire had been

lighted, the employee who was at the top of the hill noticed the glow of fire through the rear window of the basement of Badger Paint & Hardware Stores, Inc. He then opened the rear door, found the basement room in flames, and gave the alarm summoning the fire department. Within a few moments the fire department arrived, and the fire was extinguished in about fifteen minutes, but not before considerable damage had been done.

The burden of proving defendant's negligence was on the plaintiff; and there is in addition to the acts of defendant's agents evidence that bonfires had been started earlier that day by other tenants of the Klinkert building, and that these earlier fires were set within five and 20 feet from the basement door of the Badger Paint & Hardware Stores. Upon this evidence and the testimony of the chief of the Racine fire department, who reached the scene about the time the fire was extinguished and immediately made an investigation of the cause of the fire, defendant maintains that sparks from one of these earlier fires lodging in a crack between the rabbet and the door had created a smoldering fire, which, fanned by the wind, gradually burned a hole through the wood, and that sparks from the burning wood crept between the door and the jamb and ignited the paper in the basement.

The opinion evidence of the Racine fire chief was as follows:

"*Q*. What did you find with reference to that wood framework? *A*. I found that the rabbet of the door that sticks out from the doorframe had been burned through and part of the end of the door had been burned through which left an opening approximately three-fourths inch wide by four inches through the doorjamb.

"*Q*. Would you describe the character of that door? . . . *A*. . . . the door itself was covered with metal. . . .

"*Q*. You don't remember the thickness of that frame? *A*. I would say that thickness was to the outside of the doorjamb, approximately seven inches, six or seven inches.

"*Q.* In thickness? *A.* No, in width.

 . . .

"*Q.* Which particular end of it did you find the charred hole? . . . *A.* The hinge part of the door.

 . . .

"*Q.* Can you describe a little bit more clearly what the condition of that wood was when you examined it? *A.* When I say the door butts up against the shoulder of the doorjamb, which we call a rabbet, and that perhaps sticks out about one-half inch which the door butts against, . . .

 . . .

"*Q.* Would you describe a little more clearly the condition of that wooden piece that ran up the edge of the door on the hinge side? *A.* The rabbet had burned off and had burned around the metal that was on the door and had burned part of the end of the door off and part of the doorjamb which left an opening from the outside into the building approximately three-fourths inch wide by four inches long.

"*Q.* How high above the foot of the door was that? *A.* Approximately one-half way up.

 . . .

"*Q.* The burning was solely with respect to this one-half way up the door? *A.* Yes.

 . . .

"*Q.* Mr. Anderson, do you have an opinion with respect to the cause of this framework alongside the door having a hole burned through it? *A.* Yes, I have.

"*Q.* Is that opinion within a reasonable certainty? . . . *A.* I would say it was.

"*Q.* What is that opinion? *A.* That sparks or embers from a bonfire in the rear of the building ignited this doorjamb.

"*Q.* Can you elaborate a little more on how that happened? *A.* It is possible that burning paper out there, a piece of paper could be blown up and lodged against the crack between the door and the rabbet and started this doorjamb on fire.

"*Q.* Would that be fired by any air that was blowing around? *A.* There was a strong wind that day blowing directly against the rear of this building. Naturally that would speed up combustion.

"*Q*. Then it is your opinion that it would burn through the thickness of this wood and then what would happen? *A*. The sparks would blow through the crack between the door and the jamb and ignite the combustible material inside the building.

"*Q*. Was that a smoldering fire in your opinion or a flaming fire? *A*. With that wind, naturally it would have to start with more or less a smoldering action, with that wind naturally it would be a flaming fire.

"*Q*. Do you have an opinion as to the length of time it would take a piece of wood two inches in thickness to smolder through in that manner? *A*. That would be difficult for me to ascertain, too many things enter into the picture, the wind, the type of wood.

"*Q*. You don't know where that ember came from? *A*. No, I don't, I couldn't say for sure."

The jury had a right to accept as true the evidence that the door was closed and that it would be impossible for sparks or embers from a fire at the bottom of the hill, started only ten minutes before the fire occurred in the basement, to enter a crack and burn through the substance as this did in this limited time. The jury had a right not to believe that a live spark from an ember could burn through the wood and make a hole three-fourths inch in width and four inches in length unless it had smoldered and burned there for some appreciable time. The time element became of controlling significance, for if enough time could not have passed between the lighting of defendant's bonfire and the starting of the blaze as indicated inside the building for a spark from that fire to burn through the wood, it would logically follow, as the jury determined, that the Badger Paint & Hardware Stores' fire did not cause the fire which damaged the Klinkert building.

There is evidence that the basement door was closed, that fires had been built earlier in the day by some of the various users of the area behind the building for the purpose of burning trash, and that the Badger Paint & Hardware Stores had

started burning rubbish only ten minutes before fire broke out in the basement, the jury relied on credible evidence in determining that the trash fire of the Badger Paint & Hardware Stores could not have been a proximate cause of the fire in the basement.

It is understood that this court does not retry cases on appeal, and that its duty is to review the record to ascertain whether or not the judgment "is affected by prejudicial error, and in determining whether or not the verdict of the jury is sustained we must look to that testimony which, even though it be contradicted, tends to sustain the finding of the jury." *Sonnenberg v. Hardware Mut. Casualty Co.* 255 Wis. 261, 264, 38 N. W. (2d) 491. The rule has frequently been stated to be: "The verdict cannot be set aside even if it is against the great weight and clear preponderance of the evidence. It must be sustained if there is credible evidence to support it." *Hein v. Huber,* 214 Wis. 230, 233, 252 N. W. 692.

Plaintiff asks a reversal because of the trial court's exclusion from the evidence of certain pictures taken after the fire. The pictures which were rejected showed only the grounds to the rear of the building and the interior of the basement room. Necessarily considerable is left to judicial discretion at the time of the trial in determining the admissibility of a photograph, and unless there has been an abuse of that discretion resulting in prejudicial error, the matter will not be reviewed by the appellate court.

As already appears, there is no question about the occurrence of a fire. There was a view of the premises by court and jury. The pictures which were rejected were taken after the fire; they could show the result, but not the cause. As to the cause there was a clearly defined and narrow issue presenting a jury question. Plaintiffs claim that defendant started the fire at the foot of the hill and left the fire door open, and that it was through that avenue the contents of the building were set on fire. The defendant denied this and

called attention to the other source of the fire, namely, bonfires set by other tenants of the building. The building, the walls, and their relation to each other did not require an acceptance of the photographs. As we have said, the jury had a view of the premises. As cited in defendant's brief, in *Cottrill v. Pinkerton,* 211 Wis. 310, 317, 248 N. W. 124, this court stated:

"Photographs are receivable in evidence when they are exact reproductions of persons or situations, when they are not too remote, and where they are not likely to give a wrong impression or create undue sympathy or prejudice on the part of the jury. Jones, Evidence, sec. 582. There must always be some substantial, legitimate reason for the use of such representations or they should not be received."

We hold a jury question as to defendant's negligence existed; that credible evidence sustains the jury's answer in the negligence question; and that no prejudicial errors warranting the granting of a new trial occurred.

*By the Court.*—Judgment affirmed.