200 So.2d 171 (1967)
Carmela BENCOMO, a/k/a Carmen Bencomo, Appellant,
v.
William C. BENCOMO, Appellee.
No. 35678.
Supreme Court of Florida.
May 31, 1967.
*172 Horton & Schwartz, Miami, and Harold Ungerleider, Miami Beach, for appellant.
Pallot, Silver, Pallot, Stern & Proby, Miami, for appellee.
ROBERTS, Justice.
This case brings for review a decision of the trial court dismissing a cause of action by the appellant-plaintiff against the appellee-defendant for an alleged intentional tort committed during coverture of marriage between the parties, the suit being filed after the marriage had been dissolved by divorce. The plaintiff contends that she has such a right to maintain the suit under Sections 1, 4 and 12 of the Declaration of Rights, Constitution of Florida, F.S.A., and under Section 1 of Article XI of the Constitution of Florida, and also under the Fifth and Fourteenth Amendments of the Constitution of the United States. The trial court construed such constitutional provisions in its final judgment, and this court has jurisdiction to review on direct appeal under Section 4(2), Article V, Constitution of Florida.
We are thus confronted with the question of whether or not a former spouse can maintain an action in tort against the other spouse for a tort allegedly committed during marriage, where such marriage has been dissolved by divorce. The trial court held she could not and dismissed the suit. We agree.
This court has long been committed to the proposition that one spouse can not sue the other because, under the common law, they are one person. See Corren v. Corren, Fla. 1950, 47 So.2d 774, in which this court said:
"The appellant regards Chapter 21932, supra, as having destroyed the `unity of the marriage association' as it theretofore existed and reasons that if the wife may enter into agreements, as is provided in Section 2 of the act, and may `sue and be sued,' as is provided in Section 1, it follows that she, being empowered to sue her husband in case of a breach of their agreement, may also sue him for a tort committed upon her. But we cannot follow the appellant to this conclusion. `Under the common law', we said in Taylor v. Dorsey, 155 Fla. 305, 19 So.2d 876, 880, `the woman and the man became one person upon marriage, and that person was the husband. * * * This unity, or more accurately, merger, has been called the foundation for the rights, duties, and disabilities of marriage.'

*173 "We have not found in our examination of the legislative enactment any plain provision extending a married woman's rights to include a suit against her husband for tort. It seems to us that the trend toward giving a married woman more freedom has largely been with regard to her separate property and her dealings with persons other than her husband."
Continuing on Page 776:
"Our opinion coincides with that of the Supreme Court of the United States expressed in Thompson v. Thompson, 218 U.S. 611, 31 S.Ct. 111, 112, 54 L.Ed. 1180, 30 L.R.A.,N.S., 1153, 21 Ann.Cas. 921, that any change in the law so far-reaching and radical as to obliterate the common law unity `should only be wrought [by the legislature] by language so clear and plain as to be unmistakable evidence of the legislative intention.' In that decision the court commented upon the effect upon public welfare and domestic harmony if each spouse were given the right to sue the other as if they were not married and then further observed: `Had it been the legislative purpose not only to permit the wife to bring suits free from her husband's participation and control, but to bring actions against him also for injuries to person or property as though they were strangers, thus emphasizing and publishing differences which otherwise might not be serious, it would have been easy to have expressed that intent in terms of irresistible clearness.'
* * * * * *
"The legislature will assume grave responsibility when it enacts that each spouse may treat the other as a stranger so far as legal rights are concerned; and when it does so, the language proclaiming this revolutionary change should be positive and unambiguous.
"We are impelled to the conclusion that the circuit judge was eminently correct when he held that the appellant could not and should not prevail in this case."
The decision in the Corren case is buttressed by the general rule announced in 41 C.J.S. Husband and Wife § 396, which says:
"At common law neither spouse may maintain an action sounding in tort against the other. This rule aplies to injuries both to person and to property. It is usually affirmed that the reason for, or basis of, the rule which denies the right of action is the common-law doctrine of the merger or unity of husband and wife, although a public policy which seeks to preserve or promote domestic peace and felicity has also been regarded as a reason for, or basis of, the rule.
"With specific reference to the wife's right of action, she cannot maintain an action against her husband for a personal tort in the absence of constitutional or statutory provision changing the common-law rule; as otherwise stated, in the absence of such a provision she cannot maintain an action against him for an injury to her person or character. In accordance with such rule it has been held or recognized that the wife cannot maintain an action against her husband for assault and battery, for deliberately infecting her with a venereal disease, for an injury to her person resulting from his negligence, nor can the wife maintain an action against husband for false imprisonment, for malicious prosecution, for libel, or for slander."
In 27 Am.Jur., Husband and Wife, Section 589, it is also stated that:
"At common law, a tort committed by one spouse against the person or character of the other does not give rise to a cause of action in favor of the injured spouse. A divorce does not change this rule so as to enable a suit to be maintained after the obtaining of an absolute divorce."
*174 Also in 27 Am.Jur., Husband and Wife, Section 594, there appears the following language:
"Where husband and wife are not liable to each other for torts committed by one against the other during coverture, they do not, upon being divorced, become liable to each other for torts committed prior to the divorce, by one spouse on the person or character of the other during coverture. * * * The divorce cannot in itself create a cause of action in favor of the wife upon which she may sue, where it was not a cause of action before the divorce. * * *."
Also compare Amendola v. Amendola, Fla. App. 1960, 121 So.2d 805; and see 43 A.L.R. 2d 632.
In reaching this decision we have not overlooked the case of Alexander v. Alexander, D.C., 140 F. Supp. 925. In that case the United States District Court in another state undertook to construe and apply the Florida law on this subject and reached a decision opposite to the rule announced in this state in the cases herein cited. We have no way of knowing why that court elected to depart from the rule previously announced in this state, but nevertheless we still adhere to our former decisions and reject the construction adopted by the South Carolina Federal court.
We have carefully measured the line of decisions on the question by this court against the constitutional guarantees invoked by the appellant and find no conflict. The trial judge was eminently correct in dismissing the bill, and the judgment here under review is
Affirmed.
THORNAL, C.J., and THOMAS, DREW, O'CONNELL and CALDWELL, JJ., concur.
ERVIN, J., dissents with Opinion.
ERVIN, Justice (dissenting):
I think our decisional law should no longer support with pristine force the common law prohibition against actions between former husbands and wives for intentional torts committed by one upon the other during coverture, due to subsequent modifying provisions of our Federal and State constitutions and state laws. See: F.S. Section 2.01, F.S.A., which provides in part that the "common law [shall] be not inconsistent with the constitution and laws of the United States and the acts of this state." Section 4 of the Declaration of Rights of the Florida Constitution provides the state courts shall be open "so that every person for any injury done him in his * * * person or reputation shall have remedy, by due course of law * * *" (Emphasis added) Section 1, Amend. XIV, United States Constitution, provides in part "* * * nor shall any State deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."
Aside from the language mechanics indicating a modification of the common law prohibition has occurred, the reasons stated in the decisional law of Florida supporting the common law rule have in large part now disappeared because of later overruling decisions interpreting individual rights guaranteed by organic law. In support of this proposition see Prosser on Torts, 3rd Ed. pp. 879, 883, as follows:
"The courts which follow this majority view have buttressed their conclusion by inventing new arguments, not found in the early cases, for denying the remedy. Apart from stare decisis or judicial inertia, and the policy of strict construction of statutes changing the common law, it has been said that each spouse has remedy enough in the criminal and divorce laws  which obviously is untrue, since neither compensates for the damage done, or covers all the torts that may be committed. Stress has been laid upon the danger of fictitious and fraudulent claims, *175 on the very dubious assumption that a wife's love for her husband is such that she is more likely to bring a false suit against him than a genuine one; and likewise the possibility of trivial actions for minor annoyances, which might well be taken care of by finding consent to all ordinary frictions of wedlock  or at least assumption of risk ! The chief reason relied upon by all these courts, however, is that personal tort actions between husband and wife would disrupt and destroy the peace and harmony of the home, which is against the policy of the law. This is on the bald theory that after a husband has beaten his wife, there is a state of peace and harmony left to be disturbed; and that if she is sufficiently injured or angry to sue him for it, she will be soothed and deterred from reprisals by denying her the legal remedy  and this even though she has left him or divorced him for that very ground, and though the same courts refuse to find any disruption of domestic tranquillity if she sues him for a tort to her property, or brings a criminal prosecution against him. * * *
"* * * In some sixteen states one or more `exceptions' have been recognized to the general rule of complete immunity between husband and wife, where for one reason or another the considerations of policy supposed to underlie it have been held not to apply. The entering wedge is recognition that there is a tort, but disability to sue for it; and that when the reasons for the disability fail, the tort becomes actionable. Thus recovery has been permitted for intentional physical attacks, on the ground that `the peace and harmony of the home has been so damaged that there is no danger that it will be further impaired.' The same conclusion has been reached where the marriage has been terminated by separation, divorce, or annulment, or by the death of one or both spouses, whether the action is brought under a wrongful death act or a survival statute. * * *
"This is fully borne out by the fact that some nineteen jurisdictions, with the unanimous approval of legal writers, have followed the lead of a noted dissenting opinion of Mr. Justice Harlan, have rejected all arguments in justification of the immunity as specious, have thrown it completely overboard, and have construed the Married Women's Acts to authorize an action by either spouse for a personal tort committed by the other, whether it be intentional or negligent in character. * * * The number of such jurisdictions has been increasing in recent years; and this has been claimed to be due to the presence or availability of liability insurance in automobile cases. The devastating attack on the old rule found in a number of recent decisions seems to leave no possible justification for it except that of historical survival."
The following cases support the foregoing quotes from Prosser: Penton v. Penton (1931), 223 Ala. 282, 135 So. 481; Harris v. Harris (1924), 211 Ala. 222, 100 So. 333; Johnson v. Johnson (1917), 201 Ala. 41, 77 So. 335, 6 A.L.R. 1031; Bennett v. Bennett (1932), 224 Ala. 335, 140 So. 378; Katzenberg v. Katzenberg, 183 Ark. 626, 37 S.W.2d 696; Leach v. Leach (1957), 227 Ark. 599, 300 S.W.2d 15; Rains v. Rains (1935), 97 Colo. 19, 46 P.2d 740; Ginsberg v. Ginsberg, 126 Conn. 146, 9 A.2d 812; Brown v. Brown (1914), 88 Conn. 42, 89 A. 889, 52 L.R.A.,N.S., 185; Bushnell v. Bushnell (1925), 103 Conn. 583, 131 A. 432, 44 A.L.R. 785; Lorang v. Hays (1949), 69 Idaho 440, 209 P.2d 733; Brown v. Gosser (Ky. 1953), 262 S.W.2d 480, 43 A.L.R.2d 626; Combs v. Combs (Ky. 1953), 262 S.W.2d 821; Gilman v. Gilman (1915), 78 N.H. 4, 95 A. 657, L.R.A. 1916B, 907; Lumbermen's Mut. Cas. Co. v. Blake (1946), 94 N.H. 141, 47 A.2d 874; Priddle v. Farm Bureau Mut. Ins. Co., 100 N.H. 73, 119 A.2d 97; Fitzmaurice v. Fitzmaurice, 62 N.D. 191, 242 N.W. 526; Damm v. Elyria Lodge No. 465 (1952), 158 Ohio St. 107, 107 N.E.2d 337; Courtney v. Courtney (1938), 184 Okla. 305, 87 P.2d 660; Fiedler v. Fiedler (1914), 42 Okla. 124, *176 140 P. 1022, 52 L.R.A.,N.S., 189; Parduere v. Parduere (1932), 167 S.C. 129, 166 S.E. 101; Oshiek v. Oshiek, 244 S.C. 249, 136 S.E.2d 303; Scotvold v. Scotvold (1941), 68 S.D. 53, 298 N.W. 266; Forbes v. Forbes (1938), 226 Wis. 477, 277 N.W. 112; Fontaine v. Fontaine (1931), 205 Wis. 570, 238 N.W. 410; Jaeger v. Jaeger (1952), 262 Wis. 14, 53 N.W.2d 740; Cramer v. Cramer, (1963), Alaska, 379 P.2d 95.
In Harper and James on Torts, Vol. I, 1956, Sec. 8.10 on pages 645 and 646, the authors make the following observation:
"The rule denying recovery has been applied literally and blindly in many cases where the reason for the rule could not possibly apply inasmuch as there was no home to disrupt and no domestic harmony to disturb. The divorce cases are typical examples. So, too, are cases in which the wife's administrator seeks to recover for her wrongful death. This rule has been applied even when the wife was murdered by her husband and where the wife's administrator sued the husband's administrator.
"But a strong and probably increasing minority view permits the wife to sue her husband for such harms, especially if they are intended wrongs. A few liberal decisions have permitted the action for the husband's negligence. This result seems eminently desirable. The metaphysical and practical reasons which prevented such actions at common law are no longer applicable. The danger to the family peace and tranquillity here, as in the case of suits by an infant against his parent, has been grossly overemphasized. Such policy and ordinary fairness commend the right of the wife to recover for tortious invasions of her interests in personality by her husband. While as much might be said to favor an action by the husband for a harm to his person by his wife, he did not have such an action at common law and no statutes purport to enlarge his rights against his wife. But the statutes under which a married woman is liable generally for her tort are not likely to be interpreted to make her immune to her husband, and liability to him should no doubt accompany the converse rule of liability on his part for bodily harm inflicted by him on her."
See also: Alexander v. Alexander (U.S.D.C. 1956), 140 F. Supp. 925; Gremillion v. Caffey (La. App.), 71 So.2d 670; Amendola v. Amendola (Fla.App. 1960), 121 So.2d 805, Steele v. Steele (D.D.C. 1946), 65 F. Supp. 329, and Apitz v. Dames, 205 Or. 252, 287 P.2d 585, Sanchez v. Olivarez, 94 N.J. Super. 61, 226 A.2d 752.
I think the decisional law of our State reflected in the majority opinion should yield to the extent that divorced husbands or wives may sue each other for unsettled, unsatisfied or unwaived intentional torts committed by one spouse upon the other during coverture. There is some justification for retaining the common law barrier so long as the marriage relation exists, but the rationale of modern constitutional interpretations of individual rights would appear to override reasons for retaining the barrier after the marriage relation ceases. The reason the common law prohibition apparently should not be relaxed to permit tort actions during coverture between spouses is that while the marriage relation exists the presumption prevails that in conformity with marriage vows the spouse guilty of the tort will voluntarily make amends and be forgiven by the aggrieved spouse; but if not, then presumably the spouse aggrieved by the tort may obtain settlement or satisfaction from the offending spouse through divorce proceedings. Once, however, the marriage relation is severed by divorce and there was not or could not be a settlement or adjudication in the divorce proceedings of the claim of the aggrieved spouse for the intentional tort of the offending spouse, a tort action should be allowed the ex-spouse to recover damages for the intentional tort.