Angela Dorothy GASTON, Plaintiff,

v.

John PITTMAN, Defendant.

No. 1827.

United States District Court
N. D. Florida,
Pensacola Division.

May 23, 1968.

W. H. F. Wiltshire, of Harrell, Caro, Middlebrooks & Wiltshire, Pensacola, Fla., for plaintiff.

W. Spencer Mitchem, of Beggs, Lane, Daniel, Gaines & Davis, Pensacola, Fla., for defendant.

## OPINION

ARNOW, District Judge.

Under Florida law, may a woman, after divorce from her husband, maintain an action against him for a personal tort committed by him prior to their marriage?

That is the question here presented. I conclude she may not.

Plaintiff brought suit against the Defendant alleging the death of her minor child as the proximate result of the negligence and carelessness of the Defendant. Defendant, by motion, seeks summary judgment in his favor. It is undisputed and established on the record before the Court that the minor child died on May 4, 1965; Plaintiff and Defendant were married on October 2, 1965, and divorced on January 18, 1966, with this suit instituted thereafter by Plaintiff. Defendant seeks summary judgment on the ground the cause of action was extinguished by the marriage so that this suit cannot be maintained.

This is a diversity case before this Court, and Florida law applies.

■ The courts of Florida have established that, under Florida law, a divorced wife may not bring a suit against her former husband for personal tort committed during coverture (Bencomo v. Bencomo, Fla.1967, 200 So.2d 171), nor may a wife, while still married, sue her husband for a pre-marital tort committed on her by him (Amendola v. Amendola,

Fla.App.1960, 121 So.2d 805; Webster v. Snyder, (1932), 103 Fla. 1131, 138 So. 755). But Florida has not decided the question here presented.

■ *Bencomo* grounded its holding on the proposition that one spouse cannot sue the other because, under the common law,[1] they are one person. It referred to and quoted approvingly from its prior decisions in Corren v. Corren, Fla.1950, 47 So.2d 774, and Taylor v. Dorsey, (1944), 155 Fla. 305, 19 So.2d 876, recognizing the unity doctrine. It expressly rejected the conclusion in Alexander v. Alexander, W.D.S.C.1956, 140 F.Supp. 925, that the common law of Florida has been abrogated and that one spouse can sue the other for tortious acts committed by one on the other.

■ Among the states, a strong and perhaps growing minority view is that a spouse may sue the other for tort as though they were not married; and many of the courts reach such results by so construing their respective states' married women emancipation acts. 43 A.L.R. 2d at page 647; 41 C.J.S. Husband and Wife § 396, page 881. In Florida, however, her statute in that regard has been construed as not abrogating the unity doctrine, and as requiring specific legislative action to change it. *Corren*, supra, and cases therein cited.[2]

It thus appears Florida maintains the rule squarely on the common law unity doctrine.

Under these Florida decisions, the common law in effect on July 4, 1776, must provide the answer to the question here presented.

---

1. The common laws of England, of a general nature, down to July 4, 1776, except where inconsistent with the Constitution and laws of the United States and Acts of the legislature of the state, are in force in Florida. F.S. 2.01, F.S.A.

2. Florida's position is that the legislature, if it wishes to change the common law doctrine, should say so clearly and unequivocably. I have unsuccessfully resisted the temptation to add to this opinion the unnecessary comment that, to me, such position is sound. Even the legal writers advocating change recognize and admit the problems involved. See McCurdy, 43 Harvard Law Review, pages 1054–1056; Northwestern University Law Review, 51:610 (1956); Vanderbilt Law Review, 9:823 (June, 1956). Those problems properly are for legislative, and not judicial, consideration.

The omitted portion of the quotation in *Bencomo* from 27 Am.Jur., Husband and Wife, Section 594, reads as follows:

"A like rule applies to the right of action for an antenuptial tort, which is extinguished by marriage."

Cited in support is Henneger v. Lomas, (1896), 145 Ind. 287, 44 N.E. 462.[3] That opinion recognized and discussed at some length the common law unity doctrine. From the opinion:

"For the reason that the marriage extinguished antenuptial rights of action for tort or upon contract between husband and wife, the wife could not, after divorce from her husband or his death, maintain an action against him or his estate for any injury to her person or character, committed by him before their marriage or during coverture. Peters v. Peters, [42 Iowa 182] supra; Abbott v. Abbott, [67 Me. 304] supra; Libby v. Berry, [74 Me. 286] supra; Main v. Main, 46 Ill.App. 106; 9 Am. and Eng. Ency. Law, 795, and notes 9, 10; Schouler Husb. & Wife, § 81.

"These rules of the common law are founded upon the principle that the husband and wife are one in law, and not upon the theory that the wife is under legal disability. Barnett v. Harshbarger, 105 Ind. 410, 5 N.E. 718; Phillips v. Barnett, [1 Q.B. Div. 436]."

In Phillips v. Barnett, cited in *Henneger*, a divorced wife brought suit against her husband for assault committed on her during coverture. Her contention was in effect Plaintiff's contention here—that the dissolution of the marriage removed the impediment, and that the wife is now entitled to sue. The Court rejected the contention. It based its decision on the unity doctrine, pointing out there was no cause of action during coverture and that the dissolution of the marriage does not give one. (The same contention was rejected, for the

same reason, in *Bencomo*; see also Sullivan v. Sessions, Fla.1955, 80 So.2d 706).

From Mew's English Case Law Digest of 1897, Vol. 7, par. 1166:

"Chose in action of wife, and charged on A's estate, is merged on her marriage with A, and will not survive. Seys v. Price, 9 Mod. 220."

From Coke upon Littleton, 112 b, Sect. 168:

"Also, though a man may not grant, nor give, his tenements to his wife, during the coverture, for that his wife and he be but one perfon in the law; yet by fuch cuftome he may devife by his teftament his tenements to his wife, * * * for that fuch devife taketh no effect but after the death of the devifor."

From 1 Blackstone's Commentaries, 442, 443:

"§ 598. (1) Coverture of wife.—By marriage, the husband and wife are one person in law: that is, the very being or legal existence of the woman is suspended during the marriage, or at least is incorporated and consolidated into that of the husband: under whose wing, protection, and cover, she performs everything; and is therefore called in our law-French a feme covert, fœmina viro co-operta; is said to be covert-baron, or under the protection and influence of her husband, her baron, or lord; and her condition during her marriage is called her coverture. Upon this principle, of an union of person in husband and wife, depend almost all the legal rights, duties and disabilities, that either of them acquire by the marriage. I speak not at present of the rights of property, but of such as are merely personal.

"§ 599. (2) Transactions between husband and wife.—For this reason, a man cannot grant anything to his wife, or enter into covenant with her: for the grant would be to suppose her sep-

---

**3.** Criticized, but not overruled, in Hunter v. Livingston, 125 Ind.App. 422, 123 N.E. 2d 912, 1955, as being contrary to the true spirit and intent of modern emanci-pation statutes—the same contention—made unsuccessfully by appellant in *Corren*.

arate existence; and to covenant with her, would be only to covenant with himself: and therefore it is also generally true, that all compacts made between husband and wife, when single, are voided by the intermarriage. A woman, indeed, may be attorney for her husband; for that implies no separation from, but is rather a representation of, her lord. And a husband may also bequeath anything to his wife by will; for that cannot take effect till the coverture is determined by his death."

From American and English Encyclopedia of the Law, page 795:

"3. Torts Between Husband and Wife.—As husband and wife are one, not only does their marriage extinguish all rights growing out of antenuptial personal wrongs, but while it continues it is a continually operating discharge of rights arising from such wrongs. So that one spouse cannot recover, at common law, against the other, for slander or assault and battery. Nor does this right arise after the marriage has been dissolved by death, or divorce."

■ Under these authorities, at common law, any right of action possessed by a woman for a tort of the kind here involved was extinguished by her marriage to the tort feasor. As pointed out in Webster v. Snyder, supra, her marriage abated[4] her right of action. Indeed, the merger concept of the unity doctrine could permit no other conclusion than that the right of action was abated, or, to use a dictionary synonym, demolished; such is the logical and inevitable concomitant of merger under the unity doctrine. It was, as the authorities point out, extinguished—it was and could not be classed as merely suspended subject to revival on the dissolution of the marriage by death or divorce. Being extinguished, absent legislative action, divorce could not revive it or recreate it.

At common law, on marriage the husband became the owner of the wife's personal property in possession and had the right to appropriate to himself her choses in action, or all the rest of her personal property. If she survived him, she took only such of her choses in action remaining undisposed of and unappropriated. Schouler, Husband and Wife, Part IV, page 181, § 86. So the marriage extinguished the right of action for a premarital tort of this kind.

It was in the same status as premarital debt between the parties. The wife's debt to the husband was discharged, for, being liable for her debts, he could not owe himself, and so the right of action was extinguished. His debt to her was discharged for, having the right to appropriate to himself her choses in action and keep the proceeds, he could have no such right against himself, and so the right of action was extinguished.

■ As premarital interparty debts were thus affected by the marriage, so were premarital interparty torts of the kind here involved. Being extinguished by the marriage, divorce could no more revive or recreate a right of action on a premarital tort than it could revive or recreate for her a right of action on a premarital chose of action against a third person that had been extinguished by the husband, during marriage, reducing to his possession and appropriating.

The rule is rigid, but no more rigid than the common law rule that death of an injured party merged the civil right of action in the criminal act of death, and so extinguished it. At common law injury to a minor child gave rise to a right of action for damages to the father, but that right was merged and extinguished by the death of the child from those injuries. Just as the father was left without remedy of any kind, until Lord Campbell's Act, so Plaintiff here, had she never been married to Defendant, would have no right of action against him be-

4. I. e., destroyed, extinguished, did away with. See definitions, Abate, Bouvier's Law Dictionary, Words and Phrases, Vol. 1—this is, of course, a law action.

cause of her child's death were it not for Florida's wrongful death statutes. She is in the unusual position of needing legislative action respecting two rules of the common law to give her right of action. She has that legislative action respecting one, but not the other, and so her suit must fail.

Plaintiff contends her right to sue her former husband was merely temporarily suspended by the marriage, and that with the barrier of the marriage now removed, she may proceed. She argues the exclusion in *Bencomo* of the portion of the quotation from 27 Am.Jur., Husband and Wife, Section 594, referred to above, was deliberate by the Court, and that such exclusion and the reference to *Amendola* immediately following in the opinion establish her contention.[5]

Plaintiff places reliance on the following, contained in *Amendola:*

"The cause of action was not cancelled or purged by the marriage but the right of action i. e. the *right* to sue her husband on this cause was abated or suspended by the marriage. The wife was without capacity to sue her husband for personal injury because he is her husband. Webster v. Snyder, 103 Fla. 1131, 138 So. 755; Corren v. Corren, Fla., 47 So.2d 774, 43 A.L.R. 2d 632."

and places reliance also on the discussion in Shriver v. Sessions, Fla.1955, 80 So.2d 905, between "cause of action" and "right of action." As I read these and other cases, her reliance is misplaced. In each of them, as in *Webster*, the premarital tort gave rise to a cause of action. Even if it be considered these cases held the marriage did not destroy the cause of action, it still remains the right of action was abated and extinguished by the marriage. Divorce could not revive it, for, being extinguished, there is nothing to revive.

As Professor McCurdy, a legal writer critical of the continued application of the common law rule, states in an article in 43 Harvard Law Review 1030 (1933):

"A combination of all these incidents made it impossible at common law for one spouse ever to be civilly liable to the other for an act which would be a tort if the relation did not exist. Where the act occurred before marriage, a cause of action arose. If the man was the tortfeasor, the woman's right would be a chose in action, which upon marriage the man would have the right to reduce to possession. This union in one person of the right-duty relation discharges the duty as a matter of substance, and there is besides the procedural difficulty that the husband would be both plaintiff and defendant. If the woman was the tortfeasor, the man's right would be a chose in action against the woman, whose duty upon marriage would devolve upon the husband as a derivative duty, which would be discharged by union of the right and duty in the same person; and there is the same procedural difficulty."

True it is, the statement in *Amendola* quoted herein and relied on by Plaintiff, gives some difficulty, because it says the right of action was abated or "suspended" by the marriage.

Suspended, normally meaning temporary cessation, can, in the connection with which it is used, mean or imply termination. Russ v. Civil Service, 222 Ark. 666, 262 S.W.2d 137; Leibson v. Henry, 356 Mo. 953, 204 S.W.2d 310.

I assume, in *Amendola*, the word "suspended" is used in the context of termination. Alternatively, if the marriage were one that was invalid, and so could be annulled, then the right of action would remain and, the marriage being invalid, the right of action was not merged

---

5. But check with the Supreme Court of Florida's file on *Bencomo*, which has been available to me, does not support the argument. The omitted Am.Jur. statement was omitted from brief filed before the court, and it seems evident the court simply copied it. Nor does the reference "compare Amendola" necessarily mean, as Plaintiff argues, it approves the meaning she accords to the statement in *Amendola*.

and so could be said to be suspended, pending judicial determination of the invalidity of the marriage. Thus, it could be said that the right of action might, depending on the circumstances, be either abated or suspended; if the marriage was valid, it was abated, and, if invalid, it was suspended.

If the use of the word "suspended" meant either of these, it may be reconciled, and is not in conflict, with the decisions of the Supreme Court of Florida. If, however, its meaning is as Plaintiff contends, then such must be rejected as not stating the law of Florida. The Second District Court of Appeal of Florida can neither change the common law of England, nor overrule the various decisions of the Supreme Court of Florida in which, in various factual situations, it has so consistently adhered to the common law unity doctrine.

In the latest of the series of "Mitchem-Wiltshire Law Weekly,"[6] helpful letter memoranda able counsel for the respective parties have provided me, Plaintiff stresses Williams v. Legree, Fla. 1968, 206 So.2d 13. That case, allowing suit under Florida's wrongful death act by a wife living apart from her husband, involved a construction of Florida's act, and has no application here. See Sullivan v. Sessions, supra.

I have read all the authorities cited in *Henneger* that are available to me, as well as others not cited therein. No one of them I have read involved suit brought after divorce for a premarital tort—all involved either attempted suit during coverture for a marital or premarital tort, or attempted suit after divorce for a marital tort. The conclusion I reach here and the distinctions I draw thus necessarily represent my own analysis of the Florida decisions and the other authorities dealing with the common law.

Had I the power, I would have sought answer to this question from the Supreme Court of Florida. It, and not I, should determine this question of Florida law.

But that, under Florida's statute and rule, is the prerogative of the Circuit Court of Appeals, and a matter for its decision on any appeal from the judgment I shall enter.

Defendant's motion for summary judgment should be granted. Summary final judgment will be entered granting Defendant's motion and dismissing this action with prejudice, at Plaintiff's cost.

---

6. An appellation given the running correspondence by Plaintiff's counsel striking me as entirely appropriate.