## J. B. WILLIAMS, RECEIVER, v. WM. DORRIER.

### APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS OF BEDFORD COUNTY.

Argued May 14, 1890—Decided May 26, 1890.

(*a*) The cashier of an unincorporated bank, himself a partner, being indebted individually on a note he had made to a depositor, wrote to the latter that he had placed to his credit $1,000, as a payment on the note. A credit for this amount was placed to the depositor's account upon the books of the bank.

(*b*) Afterward, the cashier wrote to the depositor that he had again placed $1,000 to his credit, as a second payment, but no credit for this amount was placed to the account. The depositor checked out, from time to time, both amounts, when the receiver of the bank sued to recover the same from the depositor:

1. In such case, the bank was estopped from setting up want of authority in the cashier, so far as related to the credit for the first $1,000, but was not estopped by the act of the cashier as to the second $1,000, though the cashier had placed them both upon the depositor's pass-book; and, the bank could recover the latter as an overdraft.

Before STERRETT, GREEN, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 32 July Term 1890, Sup. Ct.; court below, No. 228 April Term 1886, C. P.

. On March 8, 1886, J. B. Williams, receiver of the Bedford County Bank, brought foreign attachment in debt against William Dorrier. The defendant appeared; issue.

At the trial on April 26, 1888, it was made to appear that the plaintiff bank was a partnership, having under its articles of association a president, directors, and a cashier who was also a partner. The cashier was one John DuBois.

William Dorrier, residing at Scottsville, Va., had a deposit account with the bank, beginning in 1881. Early in 1883, DuBois, the cashier, borrowed from Dorrier, the defendant, $3,500, upon his individual note. On March 24, 1883, DuBois informed Dorrier by letter that he had placed to the credit of the latter $1,000, as a payment in part on the note. Dorrier's account on the books of the bank was credited with the amount stated, as of the date stated. On April 12, 1883, DuBois again wrote to Dorrier, stating: "I place to your credit to-day $1,000, which makes $2,000 on my note." The books of the bank did not show this credit to defendant. The letters, as printed in the paper-books, were signed by DuBois as cashier.

Against his account, as he supposed it to be, Dorrier drew checks, from time to time, till July 23, 1883, when he called at the bank with his pass-book for a settlement of his account. His account being credited with the $2,000 and so settled by the cashier, there was a balance in his favor of $785.05, and a new pass-book was given him, starting with that balance. Dorrier's deposits and checks continued to be made and drawn till August, 1884, when his account was again settled on his pass-book showing a balance of $72.23.

The bank, becoming insolvent, passed into the hands of a receiver in August, 1884, when on examination it was found, as stated, that DuBois had credited Dorrier's account with $1,000 on March 24, 1883, but not with the $1,000, as to which he had written on April 12, 1883; and that on May 8, 1883, he had charged himself on the books of the bank with $1,000, but whether this was the credit of March 24, or April 12, 1883, did not appear. This suit was then brought by the bank to recover as for an overdraft of $2,000 made by the defendant.

At the close of the testimony, the plaintiff presented the following points for charge:

Charge of Court below.

1. That there has been offered, in this case, no such evidence of usage, custom, or authority in John DuBois, cashier, as would authorize him to pay his individual debt to William Dorrier, the defendant, by giving him a credit in the Bedford County Bank, and authorize him to draw it out or check against it.

2. That this position exists and is in full force against both credits of $1,000, claimed by the defendant, the one entered to his credit in the books of the bank, and the other appearing nowhere except as promised in the letter of DuBois to Dorrier.

3. That there is no such evidence of authority, knowledge, or acquiescence in the action of DuBois by the stockholders or directors as would bind the bank.

4. That, under all the evidence in the case, the jury should reject both credits of $1,000, claimed by the defendant, and render a verdict for the plaintiff for the amount due on its account against him, after deducting the credit of $1,000 wrongfully entered May 8, 1883.

5. That there is no rule of law in Pennsylvania which authorizes the cashier of a bank to pay his individual debts with the funds of the bank, nor is there any rule which authorizes one partner of a firm to pay his own individual debt with the assets of the firm.

The defendant submitted a point, inter alia, as follows:

9. That, under all the evidence in this case, the verdict must be for the defendant.[2]

The court, BAER, P. J., charged the jury as follows:

[In answer to the five points of the plaintiff, we charge you that the entry of the credits upon the plaintiff's bank-book of $1,000 on March 24, 1883, and $1,000 on April 12, 1883, without any check, bill, or note being presented for payment or discount, or money paid, but simply on the ground of an individual indebtedness of the cashier (who was also a partner) to the defendant, and without a corresponding charge against the cashier, was an act beyond the scope of the powers of the cashier, as it also was beyond the scope or power of DuBois as a partner, and did not bind the bank. But, as the cashier entered credit upon the books of the bank for the $1,000, of 24th March, 1883, as a deposit in favor of the defendant, against

Opinion of Court below.

which he was permitted to and did draw his checks, drawing all of it out of the bank, and, as no objection was made by the bank, or any member of the firm constituting the banking company, to the credit so given and money paid out on the checks, until after the failure of the bank, as late as August, 1884, the banking firm must be taken to have acquiesced in and ratified the action of its cashier, and is now estopped from setting up want of authority in the cashier, so far as relates to the credit given as of 24th March, 1883. Having, however, entered no credit on the books of the bank, and having received for the bank neither check, bill, note, nor money, but simply informed the defendant that he had credited him with an additional $1,000 on the 12th April, 1883, on account of his individual indebtedness to the defendant, and permitted him to check against it, nothing appearing on the books of the bank to indicate that this was anything but an overdraft, the bank did not thereby receive any benefit and did not become liable to the defendant as for a deposit of said $1,000 as of 12th April, 1883.] [3]

[In the opinion of the court, the question on the undisputed facts is one of law; and hence, as the defendant submitted a point asking us to charge that on all the evidence the verdict should be for the defendant, and the plaintiff, that under all the evidence the verdict should be for the plaintiff for $1,994.77, with interest from 16th August, 1884, we do now charge you and direct a verdict for the plaintiff for all of plaintiff's claim, except the $1,000 paid defendant on the credit given to him in his account on the books of the bank as of 24th May, 1882, to wit, the sum of $994.77, with interest from 16th August, 1884; reserving the question whether the verdict on all the evidence should be for the defendant, and on proper motion, now ordered to be filed, whether judgment should be entered for the defendant non obstante veredicto; and all points inconsistent with this ruling are refused.] [1]

—The jury returned a verdict for the plaintiff for $1,171.49.

On March 25, 1889, a motion for judgment for the defendant, non obstante veredicto, and for a new trial, having been argued, the court, BAER, P. J., filed the following opinion:

The ordinary duties of a cashier are to keep the notes, funds,

Opinion of Court below.

bills, and other choses in action of the bank, to be used from time to time for the exigencies of the bank; to receive directly and through subordinate officers all moneys and notes of the bank; to surrender notes and securities upon payment; to draw checks; to withdraw funds of the bank on deposit; and generally to transact, as the executive officer of the bank, the ordinary routine of business: Man v. Massachusetts N. Bank, 1 Holmes C. C. 209–211. And, as persons dealing with a bank are presumed to know the ordinary duties of the cashier, it seems clear that the entry of a credit upon defendant's bankbook of $1,000, without at the same time entering a credit to him on the books of the bank, and without receiving some note, check, money, or thing of value for the bank, was an act not within the scope of his authority, and did not bind the banking firm.

Viewed in the light of a bank, nor, in my opinion, viewed in the light of a partnership, was it within the scope of the powers of one partner to pay out the funds and assets of the partnership in payment of his own individual debts. Though a partnership, it was doing a banking business, as it had organized itself into a quasi corporation, with president, directors, and cashier, and so held itself out to the world. But whether cashier or partner, he could not pledge the credit of the firm for his private debts, nor pay his own private debts out of the partnership funds. Such illegal conversion of the funds gave to his private or separate credit no better title to the funds than he himself had.

The defendant is presumed to have known the nature and extent of the business of the firm; and, if the act of the partner becomes a fraud upon his copartners, his creditor who takes the benefit of the act, with knowledge that it is beyond the scope of the business of the partnership, himself becomes guilty of a fraud, unless in some way he shows some express authority given to such partner, or some positive or implied recognition and confirmation of his act by the firm. If the act was not within the scope of the powers of DuBois, either as cashier or partner, as it certainly under all the evidence was not, then, as the defendant must be presumed to know the scope of the powers of a cashier, as well as the powers of a partner in the scope of the particular business, no title passed to the money

Opinion of the Court.

checked out, and the partners may reassert their claims to it by treating it as an overdraft, and recover back the money paid on the checks.

The motion for new trial is refused and judgment ordered to be entered on the verdict on payment of the jury fee.

—Thereupon, the defendant took this appeal, assigning for error [inter alia]:

1. The answer to the plaintiff's fourth point.[1]
2. The refusal of defendant's ninth point.[2]
3. The portion of the charge embraced in [ ] [3]

*Mr. John M. Reynolds*, for the appellant.

Counsel cited: Minor v. Mechanics Bank, 1 Pet. 70; Case v. Citizens Bank, 100 U. S. 454; Lloyd v. West Branch Bank, 15 Pa. 172; Leather Manuf. N. Bank v. Morgan, 117 U. S. 96; Boas v. Updegrove, 5 Pa. 518; Real-Est. Sav. Inst. v. Linder, 74 Pa. 373.

*Mr. John Cessna* (with him *Mr. S. L. Russell* and *Mr. J. H. Longenecker*), for the appellee.

Counsel cited: Savings Bank v. Shawnee Co. Bank, 95 U. S. 557; Mapes v. Second N. Bank, 80 Pa. 163; Bedford R. Co. v. Bowser, 48 Pa. 29; Commonwealth v. Reading S. Bank, 43 Am. Rep. 497; Lee v. Smith, 54 Am. Rep. 101; Bank of U. S. v. Dunn, 6 Pet. 51; United States v. City Bank, 21 How. 356; Leonard v. Winslow, 2 Gr. 139; Purdy v. Powers, 6 Pa. 492; McKinney v. Brights, 16 Pa. 399; Noble v. McClintock, 2 W. & S. 152; Todd v. Lorah, 75 Pa. 155.

PER CURIAM:

There is nothing in this record that requires a reversal of the judgment. Neither of the specifications of error is sustained.

Judgment affirmed.