ANDERSON, Appellant, vs. STRICKER and another,
Respondents.

*January 6—February 2, 1954.*

For the appellant there was a brief by *Brazeau & Brazeau* of Wisconsin Rapids, and oral argument by *Richard S. Brazeau.*

For the respondents there was a brief by *Graves & Chambers* of Wisconsin Rapids, and oral argument by *R. B. Graves.*

MARTIN, J.   In his complaint plaintiff alleged negligence on the part of Mrs. Stricker in the following respects: (1) That she failed to keep a proper lookout; (2) that she failed to have her automobile under proper control and management; (3) that she failed to give a suitable and audible signal to the plaintiff as required by law; (4) that she was traveling at an excessive rate of speed under existing circumstances; and (5) that she failed to pass plaintiff's vehicle at a sufficient distance to the left.   In granting defendants' motion the trial court held that the evidence did not raise a jury issue as to negligence on the part of Mrs. Stricker.

According to plaintiff's testimony, he was traveling along the highway at a speed of not more than 13 miles per hour; the road was "very rough and bumpy," "washboardy," and pitted with chuckholes, so that he turned his vehicle from side to side to avoid the holes on his side of the road.   At the place where the accident occurred, for a strip of about 18 feet, the road was "unusually rough—there's a place where two people hardly ever pass at the same time, and usually when they got to that position one would wait for the other to pass."   He testified further that at "this particular place where I was with my tractor the chuckhole was all the way across."

Mrs. Stricker testified that she was traveling between 30 and 45 miles per hour; that the gravel surface of the road was "washboardy to a certain extent;" that she was about one quarter of a mile behind plaintiff when she first saw him. She did not keep her eyes glued on the tractor, and admitted that plaintiff "may have" turned from time to time as he was proceeding ahead.

Defendants contend it is absurd to claim that Mrs. Stricker did not keep a proper lookout. But it was not enough for her simply to see the plaintiff driving his tractor along the road before her. The duty to maintain a proper lookout required her to see everything there was to see which would enable her to avoid a collision with him. In our opinion the question of her lookout was for the jury to determine. Upon the evidence in the record, it may well have considered that plaintiff's pattern of driving and the "unusually rough" surface of the road at the spot Mrs. Stricker chose to pass were conditions which she should have observed and considered in forming her judgment as to where and how to pass the tractor, and that her failure to do so was negligence.

Whether Mrs. Stricker properly managed and controlled her car was likewise for the jury. Her testimony was that she started to turn out to pass when she was two or three car lengths behind the tractor, while traveling at a speed of about 30 miles per hour, or approximately 20 miles per hour faster than the rate at which the tractor was moving.

Plaintiff's tractor was of the type having two small wheels together at the front and two large wheels at the rear. He testified that immediately prior to the collision he was turning the front wheels to the left around a large chuckhole, which he estimated at six to seven feet from the south edge of the road, with the intention of straddling the hole with the rear wheels. "The collision came, I remember clearly, after I had avoided the chuckhole with the front wheel, and I had the tractor going straight down my lane."

Mrs. Stricker testified that just before she attempted to pass, plaintiff was driving on the right side of the road, but that he turned his tractor to the left; that when he made such turn the front of her car was beside the back wheels of the tractor.

There being a conflict in the evidence, it became a jury question whether Mrs. Stricker properly managed and con-

trolled her automobile in attempting to pass the tractor, both as to whether she invaded the right lane of the road and as to whether, even if she was in her proper lane, she failed to pass at a sufficient distance to the left of the tractor, considering the condition of the road and the manner of plaintiff's driving.

Sec. 85.16 (1), Stats., requires the operator of an overtaking vehicle to give an audible warning before passing or attempting to pass another vehicle, and sec. 85.16 (4) requires the operator of a vehicle being overtaken and passed by another to "give way to the right if practical in favor of the overtaking vehicle on suitable and audible signal being given."

The evidence shows that shortly after the accident Mrs. Stricker told the traffic officer she didn't remember whether or not she blew her horn before she attempted to pass. On the trial she testified that when she was two or three car lengths behind the tractor, going approximately 30 miles per hour, she blew her horn and then swung out to go around; that although she did not observe the plaintiff carefully, she took it for granted he knew she was there, but that he did not do anything to lead her to believe that he heard her signal. Plaintiff stated that he did not hear the horn.

Defendants contend that plaintiff's testimony that he did not hear the horn can have no probative force unless it affirmatively appears that he was not inattentive. There is testimony by the plaintiff, however, that his hearing was good; that other cars had passed him on the road previous to Mrs. Stricker's attempt, had sounded their horns, and he had heard them. Under the law plaintiff was not obliged to give way to the Stricker car until he heard the signal. *Swinkels v. Wisconsin Michigan Power Co.* (1936), 221 Wis. 280, 267 N. W. 1. In view of the fact that plaintiff was sitting out in the open, behind the engine of his vehicle, and only some 35 feet away from the car when Mrs. Stricker

said she blew the horn, the jury could have decided that plaintiff would have heard the horn, if sounded.

Furthermore, the requirement that the signal be suitable as well as audible clearly implies that it be given at a time when the operator of the overtaken vehicle will have the opportunity to respond by yielding the right of way. On Mrs. Stricker's own testimony as to when she sounded the horn, the jury may well have concluded that, even though audible, the signal was not suitable.

From the evidence set out, it was also for the jury to determine whether or not Mrs. Stricker's speed was negligent under the existing circumstances.

We have recited only such portions of the evidence as is necessary to show that it was conflicting on all questions regarding Mrs. Stricker's alleged negligence. In our opinion, all such questions should have been submitted to the jury and a new trial must be had.

As stated in *Czerniakowski v. National Ice & Coal Co.* (1948), 252 Wis. 112, 115, 31 N. W. (2d) 156:

"The rule of law is well established that if the evidence is conflicting, or if the inferences to be drawn from the credible evidence are doubtful and uncertain, and there is any credible evidence which under any reasonable view will support or admit of an inference either for or against the claim or contention of any party, then the rule that the proper inference to be drawn therefrom is for the jury should be firmly adhered to and the court should not assume to answer such question either upon a motion for nonsuit or direction of verdict, or by substituting another answer after the verdict is returned. *Wisconsin Telephone Co. v. Russell* (1943), 242 Wis. 247, 252, 7 N. W. (2d) 825, and cases there cited."

It is not necessary to discuss the evidence pertinent to the alleged negligence on the part of plaintiff. Such negligence is likewise for the determination of the jury on the new trial.

*By the Court.*—Judgment reversed and cause remanded for a new trial.