Home Savings Bank, Respondent, vs. Gertenbach, Appellant.*

*June 1—June 28, 1955.*
*October 12—November 8, 1955.*

* Motion for rehearing granted.

388

For the appellant there were briefs and oral argument by *Ray T. McCann* of Milwaukee.

For the respondent there was a brief by *Stern & Stern* of Milwaukee, and oral argument by *Morris Stern* and *James F. Stern*.

CURRIE, J. Counsel for the defendant Gertenbach correctly urges that the learned trial court applied the wrong

test, as to the sufficiency of evidence necessary to sustain the jury's answer to the first question of the special verdict, in setting the same aside on the ground that such answer was "against the great weight and preponderance of the credible evidence in the case." The proper test to have been applied was whether there was *any credible evidence* which supported the jury's answer. *Anderson v. Stricker* (1954), 266 Wis. 1, 6, 62 N. W. (2d) 396; *Commerce Ins. Co. v. Badger P. & H. Stores* (1953), 265 Wis. 174, 182, 60 N. W. (2d) 742; *Czerniakowski v. National Ice & Coal Co.* (1948), 252 Wis. 112, 115, 31 N. W. (2d) 156; and *Wisconsin Telephone Co. v. Russell* (1943), 242 Wis. 247, 252, 7 N. W. (2d) 825.

While we are in accord with the view expressed by the trial court in his memorandum decision, that the greater weight of the evidence is opposed to the jury's answer to the first question of the verdict, nevertheless, the testimony of Gertenbach and his attorney constituted evidence upon which the jury might ground its finding that the agreement was made on or about August 1, 1950, by the bank acting through its president, to release Gertenbach from the guaranty if he sold and transferred his stock to Schwartz. The credibility of such evidence was for the jury. It was therefore error for the trial court to change such answer of the jury to such question of the special verdict from "Yes" to "No."

Counsel for the plaintiff bank contend that irrespective of the jury's findings in the special verdict plaintiff is entitled to recover on the continuing guaranty against Gertenbach as a matter of law. Among the grounds advanced in support of such contention are the following:

(1) Gertenbach's liability on the guaranty continued until the required written notice of revocation was given by him.

(2) The alleged promise to release Gertenbach as guarantor is void for want of consideration.

(3) The president of the bank was without authority from the board of directors to make the alleged agreement releasing Gertenbach as guarantor.

(4) There is no credible evidence that the directors ever ratified the alleged agreement to release Gertenbach from the guaranty.

In considering the first of the above-enumerated contentions, it seems to us that counsel has failed to perceive the effect which would necessarily result from a valid termination of the guaranty. If the contract is validly terminated, all of its terms are abrogated and there ceases to exist any requirement with respect to giving written notice of revocation. The provision of the instrument covering written notice of revocation provides a means whereby the guarantors can relieve themselves of liability as to any obligations of Gates Golden Grill incurred after the giving of the notice, but liability of the guarantors still continues as to previously contracted indebtedness of such debtor corporation. On the other hand, a valid termination would relieve the guarantors from all liability whatsoever.

The law is clear that a guaranty which is required by the statute of frauds to be in writing may be terminated by a subsequently executed oral agreement. *Kelly Springfield Tire Co. v. Faulkner* (1937), 191 Wash. 549, 71 Pac. (2d) 382. This is true even though the original instrument of guaranty be executed under seal. 3 Corbin, Contracts, p. 222, sec. 574. The brief submitted in behalf of plaintiff bank urges that to permit proof of termination in the form of an oral agreement would violate the parol-evidence rule because it would vary an express term of the contract of guaranty, viz., the one requiring that written notice of revocation be given. A complete answer to this is found in the following statement appearing in 3 Corbin, Contracts, p. 225, sec. 574:

"The existence and the terms of this modifying or discharging agreement can be proved by the same kinds of evi-

dence that are admissible to prove any other kind of contract; and one denying the making or the terms of such an agreement can support his denial by the usual kinds of testimony, written or oral.

"But after these issues have been determined and the court finds, as a fact, the making and the terms of the modifying or discharging agreement, *we are no longer interested in the terms of the antecedent contract for purposes of enforcement of them, in so far as those terms have been nullified by the new agreement.* They are of yesterday; and their jural effect has been nullified by the events of today. This is the ordinary substantive law of contracts; it is not a rule of evidence and is not stated in the language of evidence, parol or otherwise." (Emphasis supplied.)

However, in order to have a valid oral agreement terminating the guaranty as to Gertenbach, such new agreement must be supported by consideration. It is contended that the alleged parol agreement to release Gertenbach lacks such essential element of consideration. According to the testimony of Gertenbach and Meinecke, Gertenbach refused to sell his stock in Gates Golden Grill unless he was released from the guaranty, and, after Kruyne in behalf of the bank agreed to such release, Gertenbach then proceeded to sell and transfer such stock to Mr. and Mrs. Schwartz. The record does not establish that Gertenbach had made any binding commitment to sell such stock to Mr. and Mrs. Schwartz prior to the making of such alleged verbal agreement between Gertenbach and the bank as to the release of Gertenbach from the guaranty. Therefore, in proceeding to sell and transfer the stock to Mr. and Mrs. Schwartz, Gertenbach did something that he had the privilege of doing, or not doing, as he saw fit. It is this transfer of the stock to Mr. and Mrs. Schwartz which counsel for Gertenbach contends constituted the consideration for the alleged agreement on the part of the bank to release Gertenbach from liability on the guaranty.

That such act on the part of Gertenbach constituted sufficient consideration to support the alleged promise of the

bank to release him from the guaranty, is amply demonstrated by the following statements appearing in 1 Williston, Contracts (rev. ed.), pp. 323, 326, secs. 102, 102A:

"The requirement ordinarily stated for the sufficiency of consideration to support a promise is, in substance, a detriment incurred by the promisee or a benefit received by the promisor at the request of the promisor. . . .

"Benefit and detriment have a technical meaning. Neither the benefit to the promisor nor the detriment to the promisee need be actual. 'It would be a detriment to the promisee, in a legal sense, if he, at the request of the promisor and upon the strength of that promise, had performed any act which occasioned him the slightest trouble or inconvenience, and which he was not obliged to perform.' " (*Bigelow v. Bigelow* (1901), 95 Me. 17, 22, 49 Atl. 49.)

The definition of consideration referred to in the above quotation from Williston on Contracts, that the same may consist of a detriment to the promisee or a benefit to the promisor, has been adopted by this court. *Drovers' Deposit Nat. Bank v. Tichenor* (1914), 156 Wis. 251, 256, 145 N. W. 777; *Onsrud v. Paulsen* (1935), 219 Wis. 1, 4, 261 N. W. 541; and *Estate of Hatten* (1940), 233 Wis. 199, 219, 288 N. W. 278.

The fact that the bank may not have received any actual benefit from Gertenbach's sale of his stock to Mr. and Mrs. Schwartz is immaterial. As this court pointed out in *Estate of Hatten, supra* (233 Wis. at page 216), the law is not concerned with mere inadequacy of consideration.

The fact that the alleged verbal agreement releasing Gertenbach from the guaranty was supported by legal consideration does not necessarily mean that such agreement is binding upon the bank. If Kruyne, as president of the bank, had no actual or apparent authority to make such an agreement, and his act in so doing was not subsequently ratified by the board of directors, the contract would not be binding upon the bank and would present no valid defense to the bank's action upon the guaranty.

This brings us to consideration of the last two contentions advanced by counsel for the plaintiff bank, viz., the lack of authority on the part of Kruyne to make the alleged agreement, and the alleged absence of credible evidence tending to establish ratification by the directors. The continuing guaranty was carried on the collateral ledger of the bank as an asset of the bank. There is no evidence of any actual authority extended to Kruyne as president of the bank to release an asset of this kind without its full money's value having been paid to the bank. The general rule applicable to the situation at hand is succinctly stated in 7 Am. Jur., Banks, p. 185, sec. 250, as follows:

"He [the president of the bank] cannot, unless specially empowered to do so, release debtors of the bank otherwise than in due course and on full payment of their debts."

For authorities in support of the above-stated principle see annotations in 11 A. L. R. (2d) 1305, 1309, 1316; 108 A. L. R. 713, 715 (this annotation relates to the authority of a bank cashier but is equally applicable to a bank president); 67 A. L. R. 970, 976.

4 Zollmann, Banks and Banking (perm. ed.), p. 259, sec. 2233, states:

"The release or composition of a debt is a matter peculiarly within the province of the directors. It affects, not only the prosperity of the institution, but its very existence. There is no necessity for the sole judgment of the president, cashier, or other officer of the bank."

In *State ex rel. Squire v. Frasier* (1938), 133 Ohio St. 283, 13 N. E. (2d) 248, it was sought to hold the defendants liable on a note executed to a bank originally secured by a real-estate mortgage. The evidence in behalf of the defendants established a verbal agreement upon the part of an executive officer of the payee bank, one Coulton, to release the defendants from liability on the note in consideration for the defendants conveying the mortgaged premises to a pur-

chaser who assumed and agreed to pay the indebtedness. The Ohio supreme court held that such evidence did not establish a good defense and stated (133 Ohio St. 286, 13 N. E. (2d) 249):

"Furthermore, an officer of a bank has no inherent power to release a debtor from an obligation due the bank, such as a promissory note, otherwise than in due course and upon payment. If he undertakes to do so on his own initiative and without authority, he is acting outside the scope of his apparent powers and not according to usage, practice, or the usual course of business, and the bank will not be bound thereby. [Citing extensive authorities.] . . .

"Under the circumstances disclosed in the instant case, the burden was on the appellees to show affirmatively that Mr. Coulton had express authority from the board of directors or the executive committee of the Union Trust Company to make an agreement such as the one alleged, or that he had been allowed to exercise independent authority in the same or similar matters on other occasions, or that such agreement had been brought to the attention of the board or committee and duly ratified."

This court in *Schwenker v. Parry* (1931), 204 Wis. 590, 595, 236 N. W. 652, stated:

"(1) A customer dealing with a bank must be presumed to know the usual and customary authority of the cashier of the bank who is the principal executive officer thereof. *Williams v. Dorrier,* 135 Pa. St. 445, 19 Atl. 1024; *Columbia Bank v. Morgan, supra* [198 Wis. 476, 224 N. W. 707], p. 480.

"(2) One dealing with a bank must be presumed to know that a cashier thereof has no authority, express or implied, to give away any of the assets of the bank. *Markville State Bank v. Steinbring,* 179 Minn. 246, 228 N. W. 757 (in which many cases are cited)."

The above-quoted principles would be equally applicable to Gertenbach's dealing in the instant case with Kruyne, president of the bank, who, rather than the cashier, was the principal executive officer thereof. Furthermore, Gertenbach, in his dealing with Kruyne, was represented by Meinecke,

who was not only an attorney but also a director of the bank, though not such director at the time of trial.

We consider *State ex rel. Squire v. Frasier, supra,* to be particularly in point upon the issue of Kruyne's authority as president of the bank to make the alleged parol agreement testified to by Gertenbach and Meinecke. It will be recalled that in the instant case the bank did obtain the signatures of Mr. and Mrs. Schwartz as indorsers on the new $26,600 note of August 1, 1950, given in renewal of the prior $15,000 note as to which Gertenbach was liable as guarantor.

Upon the basis of the authorities hereinbefore cited it is our conclusion that Kruyne had neither actual nor apparent authority on August 1, 1950, to enter into the alleged verbal agreement releasing Gertenbach from the continuing guaranty. However, if the board of directors later ratified Kruyne's act of releasing Gertenbach, then the alleged agreement of release would be binding on the bank.

The jury found by their answer to the third question of the special verdict that there had been ratification or approval on the part of the bank's directors. In order for this court to affirm the judgment of the trial court in finding Gertenbach liable on the guaranty we, of necessity, would have to find in accord with the contention of plaintiff bank's counsel, that there was no credible evidence to support such finding. This necessitates a thorough review of the testimony bearing on such issue of ratification.

All the directors constituted the members of the loan committee of the bank. It was customary for the loan committee to meet each Thursday, while the board of directors' meetings were held once each month. The new loans were passed upon by the loan committee, and then the action taken at the various loan-committee meetings was read and approved at a subsequent meeting of the board of directors. At the meetings of the loan committee it was customary for Mr. Baivier, cashier of the bank, to present to the committee sheets on which were typed the number of each new loan, the

name of the borrower, and the amount of the loan. The members of the committee then indicated their approval of such loans by placing their initials on such sheets. The sheets of new loans made by the bank which were acted upon at the loan-committee meetings of August 3 and August 10, 1950, were received in evidence. The $26,600 loan to Gates Golden Grill of August 1, 1950, was not listed on these exhibits because it was the practice of the bank officers to list only new loans and not old ones, even though the amount of a renewal loan might be increased over the amount of the prior loan renewed thereby. The action taken by the loan committee with respect to the loan-committee meetings of August 3 and August 10, 1950, was reported to the directors' meeting held September 12, 1950. The serial number of the $26,600 loan was such that, if it had been listed as a new loan (which it was not), it would have fallen within the group of loans presented at the August 10, 1950, meeting of the loan committee.

Both Kant and Meinecke were directors of plaintiff bank in 1950, but failed of re-election at the January, 1951, annual meeting of the bank's stockholders. Kant was called as an adverse witness by the defendant Gertenbach and his testimony as to the ratification issue is as follows:

"*Q.* Now I will ask you, Mr. Witness, if it isn't a fact that at the meeting of the loan committee Jacobus Kruyne reported to you and the other members of the loan committee that Gertenbach had been released upon his obligation, the guaranty? *A.* Yes, sir.

"*Q.* And there isn't any doubt about that in your mind, is there? *A.* Not at all.

"*Q.* And I will ask you whether or not it isn't a fact that subsequent and at the meeting of the board of directors, if Mr. Jacobus Kruyne didn't tell the board of directors, in your presence, that Gertenbach had been released from liability on the guaranty? *A.* That is correct.

"*Q.* And I will ask you whether or not at that time he didn't justify his loaning this money upon his investigation

of the Schwartzes in reference to their financial condition?
*A*. That is correct.

"*Q*. And didn't he report both to the loan committee and to the board of directors that he knew Schwartz to be a good restaurant man? *A*. All those reports were made to two groups: The loan committee and the directors."

Meinecke testified that at the meeting of the bank's board of directors following the making of the $26,600 loan of August 1, 1950, Mr. Kruyne reported that Gertenbach had been released from the guaranty. In respect to this he was asked in cross-examination the following question and gave the following answer thereto:

"*Q*. As far as your recollection is at the present time, there was no resolution or motion approving the action of Mr. Kruyne in releasing Mr. Gertenbach? *A*. Well, let's say that there was no objection to the actions of Mr. Kruyne as to anything that he did because they considered his judgment okay. I imagine if someone didn't like it at the board meeting he would throw up his hands and argue with Mr. Kruyne about it. That is the way those meetings were handled."

Meinecke was also asked whether everything that transpired at a bank's directors' meeting was recorded in the minutes of the meeting, and his answer was: "Well, I don't think I would be able to answer that. I know there were certain pertinent things and motions that would certainly go into the minutes."

A photostatic copy of the minutes of the bank's directors' meeting of September 12, 1950, was received in evidence as an exhibit and contained no reference whatever to releasing Gertenbach from the guaranty or of the granting of the $26,600 loan to Gates Golden Grill. Such minutes also disclosed the directors present and absent at the loan-committee meetings of August 3 and 10, 1950, and Kant, while present at such directors' meeting of September 12, 1950, was recorded as being absent from said two loan-committee

meetings. Furthermore, while the typewritten sheets of the loans approved at the loan-committee meetings of August 3 and 10, 1950, bore the initials of the members of the committee present at such meetings the initials of Kant were missing therefrom. Thus Kant's testimony, that he heard Kruyne report at a meeting of the loan committee following the making of the $26,600 loan that Gertenbach had been released from the guaranty, is seriously impeached.

Kruyne, Baivier, the cashier of the bank, and Steinfuhr, another director, all testified positively that Kruyne did not report at a meeting of either the loan committee or of the directors that Gertenbach had been released from the guaranty. Such testimony is corroborated by the minutes of the directors' meeting of September 12, 1950, and the absence of any listing of the $26,600 loan from the typewritten lists of loans presented at the loan-committee meetings of August 3 and 10, 1950, which were initialed by the loan-committee members present at such meetings.

While the minutes of a corporate meeting are the best evidence of what transpired thereat, nevertheless, parol testimony is admissible on the part of a person present at such meeting to prove something which transpired that was not recorded in the minutes. *Huebner v. Advance Refrigerator Co.* (1929), 200 Wis. 233, 227 N. W. 868, 66 A. L. R. 1325; and 9 Fletcher, Cyc. Corp. (perm. ed.), p. 502 *et seq.,* sec. 4633.

If the issue of ratification depended upon the credibility of the testimony of Kant and Meinecke, we would be foreclosed from disturbing the jury's finding that the board of directors had approved the oral agreement made by Kruyne to release Gertenbach from the guaranty. This is because the credibility of witnesses is for the jury and not the court. *Van Galder v. Snyder* (1948), 254 Wis. 120, 122, 123, 35 N. W. (2d) 187. The question as to ratification, therefore, narrows down to whether, if Kant's and Meinecke's testi-

mony be accepted as true, such testimony would be sufficient to support a jury finding of ratification. It is our conclusion that it would not.

9 C. J. S., Banks and Banking, p. 427, sec. 201, states:

"In order to be effective as a ratification, the act or conduct relied on must have been *with knowledge of all the circumstances.*" (Emphasis supplied.)

We deem the above-stated rule to be particularly applicable to a situation where it is sought to spell out ratification on the part of the board of directors of a bank of an unauthorized contract by an officer based solely on such directors remaining silent and failing to repudiate such unauthorized act when informed of the same at a directors' meeting. If the directors take formal recorded action approving the act of one of the bank's officers there is an inference that they were sufficiently apprised of the material facts relating thereto to make an intelligent decision. Such inference cannot be drawn from mere silence on the part of the directors.

The material fact necessary for the directors of the plaintiff bank to know in order that a ratification based upon mere silence and failure to repudiate could be found by a jury was that the consideration the bank received for the alleged release of Gertenbach on his $15,000 guaranty was his sale of his stock in the restaurant to Mr. and Mrs. Schwartz which was of no benefit to the bank. Neither Kant's nor Meinecke's testimony discloses that the directors were informed of such material fact. A mere statement by Kruyne that some guarantor, such as Gertenbach, had been released would not require the directors hearing the same to take any action to repudiate such release, because the fact communicated does not carry any inference of improper or unauthorized conduct. A bank officer has authority to release a guarantor upon payment of the obligation to which the guaranty related.

A bank such as plaintiff has hundreds of outstanding loans and its directors can hardly be expected to keep in mind the collateral and guaranties covering each individual loan. This is especially true where such facts were brought to the attention of the directors some four months or more previously as was the case of the original loan to Gates Golden Grill made in April, 1950. Without Kruyne informing the directors that the debtor whose obligations were guaranteed by Gertenbach was Gates Golden Grill, when he is claimed to have told the directors at their meeting of September 12, 1950, that Gertenbach had been released from his guaranty, it is doubtful if the directors would then have known that the guaranty covered the obligations of such debtor. In view of the casual manner in which the alleged release of Gertenbach was reported to the directors, according to Meinecke's testimony, without any affirmative action being taken by the board thereon, there was no duty upon the individual directors to elucidate further facts by making any inquiries. We, therefore, cannot assume that the directors did know, at the time Kruyne is alleged to have informed them that Gertenbach had been released from his guaranty, that such guaranty related to the Gates Golden Grill indebtedness. The jury would have no right to speculate as to the existence of such fact, and the burden was upon Gertenbach to prove the knowledge possessed by the directors as to this where ratification is sought to be established by acquiescence based upon silence.

Because Kant also testified that Kruyne justified to the directors the loaning of "this money" (the $26,600 loan to Gates Golden Grill of August 1, 1950) on the basis of his investigation of the financial condition of Mr. and Mrs. Schwartz and the reputation of Mr. Schwartz as a good restaurant man, apparently it is the position of Gertenbach's counsel that an inference arises that the directors were told Gertenbach was released from his guaranty because

Schwartz's indorsement on the new note was accepted in lieu thereof. We again must point out that the jury cannot be permitted to speculate as to what Kruyne told the directors. It would be building an inference upon an inference if the jury were first permitted to infer as to what Kruyne told the directors and then, based upon such first inference, to further infer ratification from the mere silence of the directors. Standing alone, Kruyne's alleged justification for making the new $26,600 loan to Gates Golden Grill conveyed no intimation to the directors of any improper or unauthorized conduct on his part.

The Iowa court in the case of *Iowa State Savings Bank v. Black* (1894), 91 Iowa, 490, 59 N. W. 283, held that intent of members of a board of directors of a bank to ratify an unauthorized act of a bank officer cannot be presumed from mere silence. However, it is a generally accepted rule of the law of agency that affirmance of an agent's unauthorized act may be inferred from a failure to repudiate it. Restatement, 1 Agency, p. 234, sec. 94. This principle was applied in a bank case in *Ballston Spa Bank v. Marine Bank* (1862), 16 Wis. *120, but, like in most cases where such rule has been applied, the silence of the directors was coupled with a retention of benefits of the transaction by the bank.

In the instant case there was no retention of benefit of the alleged unauthorized transaction by the plaintiff bank. Mr. and Mrs. Schwartz, and not the plaintiff bank, received the benefit, viz., the transfer by Gertenbach of his stock in Gates Golden Grill. Neither Mr. and Mrs. Schwartz nor Mr. and Mrs. Gates requested the release of Gertenbach from the guaranty as a condition of executing the new $26,600 note, and while such new note would not have been received by the bank unless Gertenbach had sold his stock to Mr. and Mrs. Schwartz, such note was not the consideration which supported Kruyne's alleged promise to release Gertenbach from the guaranty. We consider that the absence of any

retention of benefit has a material bearing on the duty of the directors to repudiate in a situation where there was such a meager disclosure of facts by Kruyne as revealed by the testimony of Meinecke and Kant.

Inasmuch as the alleged agreement on the part of Kruyne to release Gertenbach from the guaranty was unauthorized, and Gertenbach has failed to prove ratification by the directors of plaintiff bank, the judgment of the trial court in behalf of the plaintiff must be affirmed.

*By the Court.*—Judgment affirmed.

STEINLE, J., took no part.

GEHL, J. (*dissenting*). The majority concede that we must accept as facts that the president of the bank, the managing head and principal active officer thereof, agreed to release Gertenbach from the obligation of his guaranty, that there was adequate consideration for the promise, and that Gertenbach sold his stock in reliance upon the promise and thereby surrendered his right to participate in the management of the business which was intended to supply the funds required to pay the loan. They concede that Gertenbach's obligation might have been terminated as he claims it was, that the fact that the bank may not have received any actual benefit from Gertenbach's sale of his stock is immaterial, that if the board later ratified the president's act the agreement of release is binding upon the bank, and, apparently, that under some circumstances, at least, ratification may be inferred from silence. They do not dispute that whether ratification has been accomplished is a question of fact, 2 Fletcher, Cyc. Corp. (perm. ed.), p. 1183, sec. 781, that the credibility of the witnesses, Kant and Meinecke, was for the jury, and that ratification need not be shown by the bank's records. 9 C. J. S., Banks and Banking, p. 425, sec. 201. They ground their ultimate conclusion solely upon the fact that the members of the board

of directors were not acquainted with knowledge of the circumstances. They quote the testimony of Director Kant to the effect that at the meeting of the loan committee the president reported that Gertenbach had been released upon his guaranty and that the same report was made by him to a subsequent meeting of the board of directors; also, that the president "justified his loan to the Schwartzes upon his investigation of their financial condition" and that he knew Schwartz to be a good restaurant man. They also refer to the testimony of Director Meinecke who said that at the directors' meeting the president reported that Gertenbach had been released from the guaranty, and that the directors offered no objection to the act of the president.

The testimony of these two witnesses must be accepted as a verity. Manifestly the jury believed it, for it is the only evidence in the record which supports the finding that the act of the president had been ratified by the board of directors. And yet the majority say that the board did not have knowledge of the material circumstances. They did have knowledge that the president had released Gertenbach without their authority. That information was sufficient to put them upon inquiry, inquiry which they should have made if they were not satisfied to trust the judgment of the president as to the advisability of releasing Gertenbach. Their silence calls for application of the following rule:

"If, at the time of affirmance, the purported principal is ignorant of material facts involved in the original transaction, he may elect to avoid the effect of the affirmance, *unless he then manifests a willingness to affirm regardless of the incompleteness of his knowledge.*" (Emphasis supplied.) Restatement, 1 Agency, p. 219, sec. 91.

In comment *e*, p. 224, under the same section it is said:

"Where the purported principal is shown to have knowledge of facts which would lead a person of ordinary prudence to investigate further, and he fails to make such investigation,

his affirmance without qualification is evidence that he is willing to ratify upon the knowledge which he has. Likewise, if, learning that one who had no authority acted for him, he affirms without qualification and without investigation, when he has reason to believe that he does not know all the facts, it may be inferred that he is willing to assume the risks of facts of which he has no knowledge."

It is undisputed that the president of the bank was given very broad authority. He testified that his authority in making loans was unlimited except by banking law; that he could make any loan he wanted to so long as it complied with the requirements of state law, and that he made the $26,600 loan to the Gates and the Schwartzes on his own authority. That is indeed evidence that the bank's directors held their president out as having unusual authority, demonstrates their confidence in him, and undoubtedly explains why they were content to rely upon his judgment when he told them that he had released Gertenbach.

"Directors [of a bank] cannot, in justice to those who deal with the bank, shut their eyes to what is going on around them. It is their duty to use ordinary diligence in ascertaining the condition of its business, and to exercise reasonable control and supervision of its officers. They have something more to do than, from time to time, to elect the officers of the bank, and to make declarations of dividends. That which they ought, by proper diligence, to have known as to the general course of business in the bank, they may be presumed to have known in any contest between the corporation and those who are justified by the circumstances in dealing with its officers upon the basis of that course of business." *Martin v. Webb,* 110 U. S. 7, 15, 3 Sup. Ct. 428, 28 L. Ed. 49.

I do not believe that the members of the board should be permitted to say in effect, as the majority obviously would have them say, that they knew that the president had released Gertenbach, that they ratified his act but did not know why they were doing it, and that therefore their ratification is ineffective.

Because it is clear to me that there is credible evidence to support all of the jury's findings I would reverse and order judgment on the verdict for defendant Gertenbach.

A motion for rehearing was granted September 16, 1955, and oral argument was heard October 12, 1955.

For the appellant there was a brief and oral argument by *Ray T. McCann* of Milwaukee.

For the respondent there was a brief by *Stern & Stern* of Milwaukee, and oral argument by *James F. Stern.*

The following opinion was filed November 8, 1955:

PER CURIAM (*on reargument*). Counsel for the defendant Gertenbach in the brief filed in support of the motion for rehearing urged that the provisions of sec. 221.08 (9), Stats., had a material bearing on the issue of ratification by the plaintiff bank's board of directors of the unauthorized release of Gertenbach from the guaranty by Kruyne, president of the bank. We granted a rehearing on the narrow question of the application of such statute.

In the instant case the burden of proof was upon Gertenbach to establish ratification. In our original opinion we, in effect, held that he had failed to meet such burden because of the absence of any evidence showing knowledge by the bank directors of any facts which would indicate to them that Kruyne's release of Gertenbach was irregular or unauthorized. In the absence of such a showing, unless such lack is supplied as a matter of law by sec. 221.08(9), Stats., there was no duty on the part of the directors to express any dissent, and no intention to affirm could be inferred from mere silence. On this latter point see comments *a* and *b,* Restatement, 1 Agency, pp. 234, 235, sec. 94.

Sec. 221.08 (9), Stats., provides:

"The board of directors shall meet at the bank at least once each month. At such monthly meeting they *shall gen-*

*erally investigate the affairs of such bank* and determine whether the assets are of the value at which they are carried on the books of the bank. Such directors shall name a loan committee of three or more of its members, a majority of whom shall be other than active executives, except in cities of the first or second class, or except when a majority of the directors are actively engaged in the bank's management. The committee shall meet at least once each month and shall determine policies as to renewals and applications for new loans. Any director who shall be found to be lax in attendance may be removed by the commissioner and such vacancy shall be filled within a reasonable time as the commissioner may direct." (Italics supplied.)

It is urged by counsel for Gertenbach that this statute made it the duty of the directors to interrogate Kruyne, when he made the alleged statement that Gertenbach had been released from the guaranty, to ascertain the surrounding circumstances which would have disclosed the irregular nature of such release. Proceeding from this premise, it is then contended that the directors, by such failure to interrogate, must be deemed to have had constructive knowledge of the material surrounding circumstances so that their silence constituted a ratification of Kruyne's act in releasing Gertenbach.

We do not construe the statutory words *"generally investigate the affairs of such bank"* as placing the affirmative duty upon the directors to interrogate Kruyne with respect to his statement that Gertenbach had been released from the guaranty. It would be imposing an extremely onerous burden upon bank directors if they were required to investigate every oral statement of a bank officer or employee made in their presence under circumstances where affirmative action was not required to be taken by the directors thereon, and there was no intimation that assets of the bank had been improperly dealt with. The statute was enacted for the protection of depositors and stockholders and must be reasonably interpreted with that objective in view.

We, therefore, conclude that no constructive knowledge existed on the part of the directors of the circumstances surrounding the release of Gertenbach on the guaranty. Whether constructive knowledge is the equivalent of actual knowledge, in spelling out ratification by silence, we find it unnecessary to determine here.

The prior mandate is adhered to.

STEINLE, J., took no part.