PEDEK, Respondent, vs. WEGEMANN and another, Appellants.

*January 9—February 5, 1957.*

58

For the appellants there was a brief by *Suel O. Arnold, James T. Murray,* and *Dougherty, Arnold & Philipp,* all of Milwaukee, and oral argument by *Mr. Arnold.*

For the respondent there was a brief and oral argument by *Alvin L. Zelonky* of Milwaukee.

CURRIE, J. The defendants first seek on this appeal to have the complaint dismissed on the ground that the two findings of causal negligence against Wegemann should be set aside, and, failing this, that it should be held that the negligence of Pedek is as a matter of law equal to, or greater than, the negligence of Wegemann. If these issues should be decided adversely to defendants' contentions, then

a new trial is requested on the following grounds: (1) Failure to submit a requested question in the special verdict inquiring as to whether Pedek was negligent in attempting to pass in the intersection; (2) inflammatory remarks of Pedek's counsel in the argument to the jury; (3) denial of defendants' request made during the course of trial for a further medical examination of Pedek; (4) refusal of the trial court to permit defendants' counsel to show that certain medical bills of Pedek had been paid by the city of Milwaukee; and (5) excessive damages.

Defendants urge that there was no duty upon Wegemann to have signaled his intention to make a left turn because he was not apprised of the approach of Pedek from his rear due to absence of lights on the motorcycle. Sec. 85.175 (1), Stats., provides, ". . . No person shall so turn any vehicle without giving an appropriate signal in the manner hereinafter provided *in the event any other traffic may be affected by such movement.*" (Emphasis supplied.)

In *Swartz v. Sommerfeldt* (1956), 272 Wis. 17, 74 N. W. (2d) 632, we held that a motorist is relieved from giving a signal of intention to make a left turn unless he can or shall have seen a car approaching from his rear. In view of the facts of the instant case, we consider this holding requires modification. The operator of a motor vehicle should not be relieved from the statutory duty to signal a left turn if he should have been apprised of the approach of a vehicle from his rear by exercise of either the sense of sight or sound. Wegemann testified that before attempting the left turn he heard the roar of Pedek's motorcycle and brought his own car to a momentary stop in the intersection because of it and then, not seeing anything to the rear, he started to make his left turn. The jury would have been well warranted in concluding that, having heard the roar of the motorcycle, Wegemann should have been apprised that it was approaching from his rear.

The testimony was in sharp conflict as to whether Wegemann flashed a signal of intention to turn left by operating his directional lights. Defendants contend that the finding of the jury, that Wegemann was negligent in failing to give an appropriate signal of his intention to turn left, is against the great weight and clear preponderance of the evidence. This argument is entirely beside the point because a finding of a jury must be sustained on appeal if there is any credible evidence to support it. See *Home Savings Bank v. Gertenbach* (1955), 270 Wis. 386, 392, 71 N. W. (2d) 347, 72 N. W. (2d) 697, and cases cited therein.

In addition to finding Wegemann negligent with respect to failing to signal a left turn, the jury also found him negligent with respect to his position upon the highway immediately before turning to the left. Pedek's testimony supports such finding. This testimony is as follows: As Wegemann proceeded north toward the intersection his car was eight to 10 feet east of the yellow line marking the center of North Downer avenue. When 10 feet south of the south curb line of the intersection, Wegemann commenced a left turn. Pedek attempted to bring his motorcycle to a stop but collided with the Wegemann car within the intersection about three or four feet to the west of the center of the intersection.

Sec. 85.17 (2), Stats., required that Wegemann should have made his left turn "from the traffic lane immediately to the right of and next to the center of the highway," and that he should have passed "immediately to the left of the center of the intersection, passing as closely as practicable to the left of the center of the intersection." On the basis of Pedek's testimony not only did Wegemann fail to make the turn from the traffic lane next to the center line of the street, but he also "cut" the corner.

Defendants advance the further argument that it was error to have submitted such question in the verdict as to

Wegemann's position on the highway because the complaint failed to allege this as one of the grounds of negligence with which Wegemann was charged. No objection was made to the receipt of the testimony establishing Wegemann's position on the highway immediately prior to the collision. Before arguments to the jury, the trial judge called counsel into his chambers and submitted the special verdict to them so that counsel might voice any objections to the form of the verdict or suggestions for change. Counsel for defendants then made this statement:

"We will state, for the purpose of the record, we have no objection to the form of the questions proposed by the court. We do, however, object to any question relating to the negligence of Wegemann being included in the verdict on the ground that in our opinion, there is no credible evidence to sustain any finding by the jury of such negligence."

Such statement by defendants' counsel must be deemed a waiver of any right now to attack on this appeal the submission in the verdict of the question relating to Wegemann's position on the highway. *Briggs Transfer Co. v. Farmers Mut. Automobile Ins. Co.* (1953), 265 Wis. 369, 372, 61 N. W. (2d) 305. If counsel had timely objected to the inclusion of such question in the verdict on the ground that it was without the scope of the pleadings, plaintiff's counsel would have been apprised of such objection in time to have moved that the complaint be amended to conform to the proof adduced at the trial.

Defendants advance the further argument that the negligence of Pedek must be deemed equal to or greater than that of Wegemann. This same contention was urged on the former appeal and decided adversely to defendants. *Pedek v. Wegemann* (1956), 271 Wis. 461, 464, 74 N. W. (2d) 198. We do not consider that there was sufficient variation in the testimony on this second trial from that given at

the first trial to warrant a different determination on this point.

We now pass on to consideration of defendants' assignments of error that are contended require the granting of a new trial.

Defendants urge that error was committed by the refusal of the trial court to include in the special verdict a question inquiring as to whether Pedek was negligent in attempting to pass in the intersection. It is our conclusion that the refusal of such request was proper in the light of all of the evidence adduced bearing on this point.

Pedek testified that, when Wegemann commenced to make his left turn at a point 10 feet south of the south line of the intersection, Pedek was then 75 feet to the rear of Wegemann's car. The width of the intersection north and south was but 30 feet. Pedek was then traveling 40 to 50 miles per hour. Wegemann testified that he was traveling 20 to 22 miles per hour as he approached the intersection. If both vehicles had continued at these respective speeds through the intersection, the motorcycle would not have overtaken and passed the Wegemann car until the latter had cleared the intersection.

Pedek further testified that as soon as he saw Wegemann commence to make the left turn Pedek applied his brake and the motorcycle skidded, and that the impact occurred three to four feet west of the center line of the intersection. While Pedek placed the left side of the Wegemann car some eight to 10 feet east of the yellow center line of North Downer at the time it commenced its left turn, Wegemann testified that as he approached the intersection the left wheels of his car were but a foot or a foot and a half east of such center line. Wegemann further testified that upon hearing the roar of the motorcycle he brought his car to a complete stop a foot or two south of the center of the intersection

while it was still east of the imaginary center line. According to Wegemann, he then had barely started his car up to continue the left turn when the motorcycle "flashed by" and the two vehicles collided.

It is undisputed that a skid mark made by the motorcycle extended back 58 feet in length from the point of impact. The north end of such skid mark was three or four feet to the west of the center line of the intersection while the south end was two feet to the east of the center line of North Downer. The greater portion of such 58 feet of skid mark necessarily extended south of the south line of the intersection. This clearly establishes that Pedek, before entering the intersection, was attempting to stop his motorcycle and negatives any voluntary attempt on his part to pass the Wegemann automobile in the intersection.

During the course of plaintiff's argument to the jury the following incident occurred:

"Mr. Zelonky: You have heard the uncontradicted testimony of the doctors here, and you can rest assured that if this man isn't permanently disabled and crippled for the remainder of his life, the insurance company would have had not one, but fourteen doctors up here testifying that that is not a fact. In fact, Doctor Schmidt who examined this man at the request of the insurance company, never came in and testified.

"Mr. Arnold: Object to that, if the court please, and ask that the jury be instructed to disregard that remark.

"The Court: That is not part of the evidence.

"Mr. Zelonky: It is part of the testimony. Testimony of Mr. Pedek was that he was examined by the doctor.

"The Court: There is nothing in the record to show Doctor Schmidt was subpoenaed and requested to come in. The court will instruct the jury to disregard that statement.

"Mr. Zelonky: I can assure you then, they would have had fourteen doctors down here to testify to the contrary, irrespective of what doctor it is."

Defendants urge that this was improper argument of such a prejudicial nature as to require a new trial. Apparently the objection voiced by defendants' counsel at the time of argument only went to the remark regarding Dr. Schmidt's failure to testify, and the trial judge instructed the jury to disregard such remark. We can observe nothing so prejudicial in the nature of the argument made as to require the directing of a new trial.

Defendants during the course of trial called to the stand some witnesses who had observed certain facts relating to the accident. Apparently defendants' counsel, in his argument to the jury, had commented upon the failure of plaintiff to subpoena such witnesses. Defendants charge that plaintiff's counsel in that part of his rebuttal argument dealing with this matter made a highly prejudicial inflammatory remark. So that we may consider such issue in its proper perspective we quote from the record as follows:

"Mr. Zelonky: So what happens? You heard the testimony of the witnesses here. I knew their testimony before the trial, and I will ask you members of the jury, and I stated this in the beginning, in my opening statement, so it isn't an afterthought, because Mr. Arnold said it—I said to you there isn't a witness who could shed any light on the accident, and I still stand back of that statement, and that is why we didn't subpoena them. *An insurance company with all of its millions can subpoena as many as they want.*

"Mr. Arnold: If the court please, I object to that argument as being improper.

"The Court: Sustain the objection." (Emphasis supplied.)

The italicized sentence appearing in the above-quoted extract from the rebuttal argument of plaintiff's counsel was improper and cannot be condoned. It is unfortunate that the trial court did not go further than merely sustaining the objection to the remark by openly expressing the court's disapproval, and instructing the jury to disregard the remark.

However, inasmuch as such remark was only directed to a comparatively minor side issue of no particular materiality to the questions of the special verdict which the jury were required to answer, we cannot believe that the same resulted in prejudice to the defendants. We, therefore, do not consider a new trial should be directed because of it.

During the course of the trial defendants requested the trial court to order that Pedek submit to a medical examination by a physician of defendants' choice, which request was denied. The complaint alleged upon information and belief that Pedek would be unable to pursue his usual employment in the future because of his injuries sustained in the accident, and that he would suffer partial permanent disability from such injuries. Furthermore, before the first trial Pedek had at defendants' request submitted to a medical examination by Dr. Schmidt. Defendants contended that they were unable to call Dr. Schmidt as a witness at the second trial because of illness but no affidavit to that effect was filed. The record fails to disclose when defendants first learned of Dr. Schmidt's illness. The trial court held that defendants had failed to establish surprise as a ground for justifying their request that Pedek be ordered to submit to a medical examination during the course of trial. With this conclusion we agree. We find no abuse of discretion on the part of the trial court in denying the request.

There was received in evidence as an exhibit a subrogation agreement between Pedek and his employer, the city of Milwaukee, whereby the city was to participate in the amount to be recovered by Pedek in the action in the event of an outcome in Pedek's favor. It was stipulated by counsel that such exhibit should not go to the jury. Later, while Pedek was on the stand, he was asked by defendants' counsel as to whether Exhibit 6 consisted of bills rendered by Pedek's attending physician and Pedek answered in the affirmative.

Defendants' counsel then asked "You didn't pay those bills yourself?" This question was objected to by plaintiff's counsel. The trial court ruled in the absence of the jury that defendants would be accorded the right to use the subrogation agreement to show the jury that the city had an interest in the litigation to the extent of being reimbursed for expenditures made to or in behalf of Pedek, but that the objection to the materiality of the question as to who paid the particular medical bills covered by Exhibit 6 was sustained. While defendants possessed the right to show the interest of the city in the outcome of the litigation under our decision in *Johannsen v. Peter P. Woboril, Inc.* (1952), 260 Wis. 341, 51 N. W. (2d) 53, a question inquiring as to who paid a particular medical bill was not the proper way of establishing such interest. Even if it were, the sustaining of the instant objection certainly was not prejudicial to defendants in view of the ruling that defendants might use the subrogation agreement to establish such interest.

We come now to the issue raised that the damages found by the jury for permanent injuries, future pain and suffering, and future loss of earnings, in the sum of $30,000, are excessive.

Pedek was thirty-six years old at the time of the accident and his life expectancy was then 31.07 years according to the American Experience Table of Mortality set forth in sec. 314.07, Stats. His monthly salary from the Milwaukee police department immediately prior to the accident was $369.60 per month. Pedek's injuries consisted of a cranial injury with multiple fractures of the skull, a cerebral concussion, and multiple contusions and abrasions to the scalp and left forehead. Part of the fracture line was still visible in an X ray taken of his skull seven months after the accident. Approximately four years after the accident Pedek was experiencing headaches, dizziness, insomnia, and occasional nosebleeds. When he bends over he becomes faint and blacks

out easily. Sometimes these blackouts occur while straining at stool in the bathroom. There is competent medical testimony in the record that there is some permanent brain damage that causes these disabilities. He has permanently lost his sense of smell and his sense of taste has been permanently impaired.

The attending physician testified that the only work Pedek could undertake in the future was light work for short periods of time which would not necessitate any bending or undue stress or strain. During 1955 the Milwaukee police department attempted to have Pedek do some office work at one of the police stations but after two days he was forced to give it up because of headaches. The department then had him take a further medical examination and he was again certified as being on disability.

In view of the foregoing evidence we cannot find that the damages for permanent disability are excessive. We also find that the figure of $13,000 for approximately four years' loss of earnings between the date of accident and time of trial is supported by the evidence.

*By the Court.*—Judgment affirmed.